## Gilleland *et al. versus* Rhoads.

The defendant in an execution has no right to have appraised and set apart to him, goods to which he disclaims title.

If a debtor, at the time of the appraisement of his goods under the Act of 1849, disclaim title to a portion of those levied on, he cannot afterwards maintain an action of trespass against the constable for selling such goods.

The execution-creditor has a right to test the ownership of such goods by directing the constable to sell; without other risk than the claim of the person alleged to be the owner.

The debtor, not having claimed such goods at the time of the appraisement, and the appraisement, as to them, being merely void, cannot set up a title to them in a subsequent action against the constable.

There having been, in point of fact, no legal appraisement of such goods, the execution is a sufficient justification to the officer in making the sale, as against the defendant in the writ.

ERROR to the Common Pleas of *Armstrong county*.

This was an action of trespass by Samuel Rhoads against Matthew Gilleland, George Cousins, a constable, and Thomas L. Long, his deputy, for seizing and selling a certain piebald horse of the plaintiff, notwithstanding an appraisement of the same under the exemption law of 1849.

On the 26th March 1857, Matthew Gilleland obtained a judgment against Samuel Rhoads, before a justice of the peace, for $11.28½, on which an execution was issued and placed in the

[Gilleland *et al. v.* Rhoads.]

hands of Thomas L. Long, the deputy of Cousins, the other defendant. Rhoads gave notice to the deputy constable that he wished to avail himself of the exemption law, and demanded an appraisement of the goods levied on.

Appraisers were thereupon appointed, who made an appraisement of the goods levied on, including the piebald horse, the whole amounting to $190.25. The horse was valued at $80. At the time of making the appraisement, Rhoads was present, and notified the appraisers and deputy constable that the piebald horse belonged to his wife, and directed them to so note it in the appraisement list, which was done. And the deputy constable, having been indemnified by Gilleland, proceeded and sold this horse for $81; whereupon this action was brought.

The court below (BUFFINGTON, P. J.) charged the jury that if Rhoads had not agreed to waive the notice given and to dispense with the appraisement, he had a right to recover the value of the horse. That the mere circumstance that he alleged it to be the property of his wife, did not necessarily amount to a waiver; and that the defendants having levied on the horse as the property of Rhoads, could not controvert his title to it in this action.

To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $136.42, they removed the cause to this court, and here assigned the same for error.

*Fullerton* and *Blakeley*, for the plaintiffs in error, cited Huey's Appeal, 5 *Casey* 219; Rogers *v.* Waterman, 1 *Id.* 184; Hammer *v.* Freese, 7 *Harris* 257; Laucks's Appeal, 12 *Id.* 426.

*Golden* and *Fulton*, for the defendant in error, cited Frisch *v.* Miller, 5 *Barr* 314; McAfoose's Appeal, 8 *Casey* 278; Phillips *v.* Hyde, 1 *Dall.* 439; Blythe *v.* Richards, 10 *S. & R.* 266; Diller *v.* Roberts, 13 *Id.* 64; Flick *v.* Troxsell, 7 *W. & S.* 67; Paxton *v.* Steckel, 2 *Barr* 93; Freeman *v.* Smith, 6 *Casey* 266; Hetrick *v.* Campbell, 2 *Harris* 266; Wilson *v.* Ellis, 4 *Casey* 238; Wilson *v.* McElroy, 8 *Id.* 85.

The opinion of the court was delivered by

WOODWARD, J.—This was an action of trespass by a debtor against his creditor and a constable for levying on and selling a horse in satisfaction of the creditor's judgment, without regard to an appraisement demanded and had under the exemption statute of 1849. It appears that Rhoads, the debtor, caused an appraisement to be made of all his chattels, in the aggregate sum of $190.25, including the piebald horse in question, which was valued at $80. But at the time of the appraisement, he asserted that this horse belonged to his wife, and was not his property; and so par-

[Gilleland et al. v. Rhoads.]

ticular was he in this statement, that he insisted upon the appraisers noting it in their return.    None of the chattels appraised were mentioned in the levy, or exposed to sale, save only this horse, which the constable, after being indemnified by Gilleland, the creditor, proceeded to sell in disregard of the appraisement.  For thus selling him, this suit was brought.

In the court below, and here, the discussion turned very much on the right of the defendants in this action to show that the horse belonged to the wife of the plaintiff, and not to the plaintiff himself; but the court held the defendants estopped by the return of the execution.

In general, where a party claiming to own goods that have been seized and sold as the property of another, brings his action to recover damages therefor, it is competent for the officer to show, in defence of himself, that the plaintiff was not the owner of the goods, and this defence made out, defeats the action.   A plaintiff, in such an action, shown to have had no title, is no more entitled to damages in trespass, than he would be to a return of the goods in replevin.   But here, the plaintiff in the action trying, was the defendant in the execution.   *Primâ facie*, it was no trespass to seize and sell his goods on an execution against himself.   If a levy implies an admission of his ownership, the levy is to be taken in connection with the writ, which was a legal warrant to the officer to take and sell his property.   The return of the writ, as we read it in the paper-book, shows only the levy and sale, not the appraisement nor any other impediment to the sale; and hence, if the writ be evidence against the officer as to the ownership, it is his complete justification also for making the levy and sale. The return and the writ are evidence for the officer as well as against him.

It is only by evidence *dehors* the writ, that the plaintiff can make out his case of trespass.   It is only by showing the demand for the benefit of the exemption law and the appraisement made in pursuance thereof, that he affords a reason why the officer had not a right to sell.   But here he is met by the uncontradicted fact, that at the proper time for procuring the exemption of the horse from sale, he denied his ownership.   Disclaiming title to the horse, he had no right to demand or have an appraisement, and that which was made went for nothing.   The statute gave him an appraisement of that only which was owned by him.   A wife's separate property, since the Act of 1848, is in no sense his property, and he has no more right to claim it under the exemption statute, than he has to recover for it in trespass or replevin.

So far, therefore, as the appraisement is urged as ground for resisting the sale, we consider it an irregular and void appraisement; one that ought not to have been made, in view of the husband's denial of ownership, and one which, though made, the

[Gilleland *et al. v.* Rhoads.]

constable had a right to disregard. Nor would it alter this conclusion, to show, what does not appear from the paper-book, that the appraisement was made part of the return of the writ, for the appraisement, as explained by the appraisers, shows the alleged ownership of the horse to have been in the wife of the debtor, and not in the debtor himself. That fact—that he disclaimed the ownership, however shown, whether by the return of the writ or by evidence *aliunde*—is the condemning circumstance that kills the appraisement.

But the creditor had a right to contest the question of ownership, and this he could do no otherwise than by ordering a sale. Having indemnified the constable, he becomes, as creditors usually do in such actions as this, the real party in interest. The contest is between him and the debtor. And what is the contest ? Not who was owner of the horse ; for on that point the parties are as one ; Gilleland asserted the ownership of Rhoads, when he indemnified the officer· and directed him to proceed ; and Rhoads reasserted it, when he brought the present action. There is no contest about that in this suit. But the contest here is, whether the appraisement was regular and should have been regarded ; whether, in other words, the plaintiff should have been permitted to hold this horse exempt from levy and sale for his debt. He says, he should have been permitted· so to hold him ; the defendants say, no, you denied your ownership at the proper time for claiming the horse, and, though he were indeed your horse, it is too late now, after putting your creditor to the expense of a sale, for you to come in and claim the benefit of the exemption law.

This is the real issue between the parties on this record, and it has been several times decided. The cases show that the time for demanding the exemption is, at the levy, or, at latest, before the advertisement of the sale, unless absence or other good cause be shown to excuse the delay ; and they make denial of ownership a reason for withholding appraisement altogether. Here is the pinch of the plaintiff's case. He sues for a violation of his statutory rights, which he disclaimed at the only proper time for claiming them. The creditor and the officer proceeded at their peril of the *wife's action*, which no bond of indemnity could avert ; but she has brought no action, nor joined her husband in suing. The husband's action is not maintainable, and under the evidence the court ought so to have instructed the jury. It is virtually an attempt to get the benefit of the exemption law after an unsuccessful attempt to scare off the creditor by disclaiming ownership of the chattel levied. It is too late. And besides, the statute, as has been often said, was not made to harass creditors, but to benefit honest and *bonâ fide* debtors. A debtor who shuffles and conceals his property, denies his ownership, and does his best to defeat the lawful process of his creditor, is not the proper object

[Gilleland *et al. v.* Rhoads.]

of the statute's bounty; nor is he capable of repairing his mistake by throwing off disguises which have been found unavailing, and suing for damages. There are no circumstances in life—not even that trying hour when a man is called on to deliver up what he possesses in payment of his debts—when honesty is not the best policy.

> The judgment is reversed, and a *venire facias de novo* is awarded.