## ASSIGNED ESTATE OF JOSEPH KREIDER.

APPEAL BY L. S. MURR FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 21, 1890—Decided June 2, 1890.
[To be reported.]

1. An assignor for the benefit of creditors, who fraudulently denies the ownership of property belonging to him and thus hinders the assignee in the discharge of his duties, will forfeit his right to receive out of the assigned estate " so much property as would be exempt from levy and sale on execution," reserved by him in the deed of assignment.

2. When, under such a reservation, personal estate has been claimed, appraised, set apart and delivered to the assignor, in good faith and without notice of any fraud, the assignee would doubtless be protected, even though in fact the assignor had been guilty of fraud: Per Mr. Chief Justice PAXSON.

3. But, if the appraisers award the assignor his exemption out of the proceeds of real estate to be sold, and the assignee afterward pay over the money of his own motion and without an order of the court, he will be surcharged with it on proof that the assignor's right to receive it had been forfeited by fraud.

4. A finding by the appraisers that land, out of which such reservation is

claimed, cannot be divided, and awarding the assignor $300 out of its proceeds when sold, does not seat the claim of exemption either upon the land or its proceeds, but merely enables the assignor to claim it upon distribution of such proceeds, if otherwise entitled to it.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MC-COLLUM, JJ.

No. 402 January Term 1890, Sup. Ct.; court below, Trust Book, No. 12, p. 8.

On December 4, 1888, Lewis S. Murr, as assignee for the benefit of creditors of Joseph Kreider and wife, settled an account, which on January 21, 1889, was confirmed nisi.

In this account, the accountant charged himself with the proceeds of a farm sold by him under the deed of assignment, with $125 rent received, and with $4 received upon the sale of some rails. Among the credits claimed in the account was one for the payment of $300 to the assignor, Joseph Kreider, in pursuance of a provision in the deed of assignment excepting and reserving " so much property as would be exempt from levy and sale on execution," and of a return of appraisers finding that the assigned real estate could not be divided, etc., and awarding to the assignor $300 " out of the proceeds of the sale of the same," which appraisement was filed in the court below on May 8, 1888. David R. Buch, a lien creditor of the assignor, excepted to the credit so claimed, whereupon the court appointed *Mr. W. F. Beyer*, auditor, to pass upon this and other exceptions, and to report distribution.

The report of the auditor, so far as it related to the matters involved in this controversy was as follows:

At the time of the assignment, the assignor owned a small farm of about twelve acres, situated in Warwick township, on which he resided and which he was then engaged in farming. The moneys in the hands of the assignee consist of the proceeds of the sale of this real estate; $125 rent accrued since the assignment, and $4 for rails sold. . . . .

Appraisers were regularly appointed and exemption regularly claimed by the assignor. They found no personal property, and awarded the assignor $300 out of the real estate when sold. It is now claimed, on behalf of exceptant, that the as-

signor was guilty of fraudulent misrepresentations and conceal-
ment of his personal property, and has, by denying that he was
the owner of the same, forfeited his right to the benefits of the
act of assembly.

This is a serious charge. The evidence shows that the as-
signor had for some years been engaged in farming, and that
up to about a month prior to the assignment, there was on the
farm certain stock and farming implements, of which, to out-
ward appearance, he was the owner. About this time he got
into financial difficulties, and, it is claimed, secreted his person-
al property with intent to defraud Emanuel Kauffman, whom
he owed, and J. D. Witters, who on March 31, 1888, issued
execution against him. Even if this were true, it would be no
evidence of an attempt to defraud the assignee, but as the
Witters execution was settled without a sale, the circumstances
are evidence to show acts of ownership exercised over these
goods by the assignor three weeks before the assignment.

It was difficult to obtain answers from the assignor as to
some questions, and the one: "Did you not tell the appraisers
. . . . . that this property was not yours but your wife's?" he
positively refused to answer. Appraisers Pfautz and Badorf,
and assignee Murr, all testify that he told them, at the time
the appraisement was made, that his wife owned all the person-
alty, and that they consequently appraised none of it. David
R. Buch testifies that, the day after the assignment, he had
a conversation with Mrs. Kreider in her house, and she told
him she had nothing. This Mrs. Kreider denies.

On August 28, 1888, David R. Buch issued a fieri facias and
the sheriff levied on the personal property on the assigned prem-
ises as the property of Joseph Kreider, defendant in the judg-
ment entered to January Term 1885, No. 522. This was the
same personal property that was there at the time of the assign-
ment. Mrs. Kreider then made affidavit that she was the owner
of certain articles and served the same upon the sheriff. This
notice was respected by the plaintiff, and none of the articles
named in it were sold. The sheriff sold the balance of his levy
on September 5, 1888, and realized $214.

Two questions arise: 1. Was Joseph Kreider the owner
of the personal property on this farm at the time of the assign-
ment? 2. Was his conduct such as to forfeit his right to the
$300 exemption?

Auditor's Report.

As to the first question, there is a conflict of testimony. The auditor is of opinion, and so finds that Joseph Kreider was the owner of the greater part of said personal property at the time of the assignment.

As to the second question, it is claimed that the return of the appraisers awarding the assignor $300 from the real estate, is conclusive of his right to receive the same, as no exceptions were filed. This would be true of the confirmation of a widow's appraisement in the Orphans' Court: Runyan's App., 27 Pa. 121. Appraisements of the exemption in assigned estates rest on a different footing. They are simply filed and never confirmed at all. Indeed, it has been decided that the proper place to contest the same, is on distribution before the auditor: Imhoff's App., 119 Pa. 354. In Strouse v. Becker, 38 Pa. 190, it was decided that if the debtor "equivocates and dissembles, denies the ownership of that which he cannot hide, and embarrasses the officer of the law in the execution of his legal duties, he forfeits, not only his self-respect, but his hold on the exemption provided for honest debtors." On the same point we may cite, Dieffenderfer v. Fisher, 3 Gr. 31; Huey's App., 29 Pa. 219; Gilleland v. Rhoads, 34 Pa. 187, and Imhoff's App., 119 Pa. 350.

If the finding of facts by the auditor is correct, that Joseph Kreider was the owner of considerable personal property at the time of his assignment, then, aside from all that previously occurred, he did hinder and embarrass the assignee and subject him to danger of loss and surcharge, by denying the ownership of all the personal property at the time of the appraisement. After the assignment, and before the Buch execution, he sold some of this property and received the proceeds. That his wife was the owner is very doubtful.

Under all the circumstances of the case, the auditor is of the opinion that the assignor, Joseph Kreider, has forfeited his right to the $300 exemption, and therefore sustains the third exception, and surcharges the assignee with $300.

To the foregoing report, the accountant filed exceptions alleging that the auditor erred, in surcharging the accountant with the $300 paid to Joseph Kreider,[2] and in finding that Kreider had forfeited his right to his exemption.[5] After argument, the court dismissed the exceptions and confirmed the auditor's report, in the following opinion:

Arguments.

On a particular consideration of the exceptions above stated, taken to the findings and rulings of the learned auditor, we must confess that we were impressed with the conviction that they were subversive of the attribute of equity towards the assignor, and that they could not stand the inquisition of the adjudications of our Supreme Court, in cases homogeneous with the present one.    However, we consulted closely the authorities cited on the argument, and it is proper to say in answer or explanation of the conviction expressed, that the evidence offered and taken by the auditor, and the judicial rulings of our Supreme Court in similar cases, dispelled those convictions, and that the facts so taken and all substantially included in the findings of the learned auditor are not clearly wrong, and therefore this court cannot reverse them or set them aside.   " In the eye of the law, fraud spoils everything it touches," say Coulter, J., in Mitchell v. Kintzer, 5 Pa. 216 ; and the finding of the auditor, here, was that the assignor, Joseph Kreider, was guilty of fraudulent representations and concealment of his personal property, and, by denying that he was the owner of the same, forfeited his right to the benefits of the act of assembly exempting $300 of property of an insolvent from execution and sale. . . . .

The foregoing disposes of all the exceptions, and we must now decree the confirmation of the auditor's report absolutely.

—Thereupon the accountant took this appeal, assigning for error :

2, 5. The dismissal of the accountant's exceptions.[2] [5]

*Mr. H. M. Houser* and *Mr. John W. Appel*, for the appellant :

1. Kreider had an undoubted right to reserve in the deed of assignment property to the extent of $300 : Mulford v. Shirk, 26 Pa. 473; Bausman's App., 90 Pa. 178.   The appraisers of the assigned estate were the proper persons to set it apart for him : Peterman's App., 76 Pa. 116; and the appraisement in this instance was made at the proper time : Shaeffer's App., 101 Pa. 45.   The appraisement, awarding Kreider $300 out of the proceeds of the real estate, having been regularly and properly made and filed, and not excepted to, and no notice whatever having been given to the assignee not to pay the money over in accordance with it, the exceptant cannot now complain of the payment.   The law will protect

an innocent assignee for the benefit of creditors, in making bona fide disbursements, as against a party who has slept upon his rights or is guilty of laches.

2. When an assignor is dilatory in claiming the exemption, and thus leads the assignee to believe that it will not be claimed and to make disbursements in that belief, the assignee will be protected against such a claim made upon final distribution: Chilcoat's App., 101 Pa. 22. Will not similar protection be accorded against the laches of a creditor, who, seeing the assignor claim the exemption, makes no objection and raises no question in regard to it, until after the assignee, being led to believe that it is acquiesced in, has paid it? The appraisement filed may not seat the claim on the real estate, and may not be conclusive as between debtor and creditor, but it is at least legal notice to all parties requiring them to make known their objections. In all the cases in which assignees have been surcharged with improper payments on account of exemption, they have had notice, in some way, of the invalidity of the claim.

3. Imhoff's App., 119 Pa. 354, upon which the appellee relies, was a case of an appraisement under an execution, and the contest was directly between debtor and creditor. The object of the exemption laws is to afford some immediate relief to the insolvent debtor; and, as the law exacts diligence in making the claim it will also exact diligence on the part of a creditor who contests it. It was the exceptant's duty to move to set aside the appraisement: Williamson v. Krumbhaar, 132 Pa. 455. That case rules the question raised here. All the statutes giving exemption, being in pari materia, should be construed in reference to one another: Shaeffer's App., 101 Pa. 45.

—Counsel also argued that the testimony did not show the assignor to be guilty of such fraud as would forfeit his right to exemption, citing: Rogers v. Fales, 5 Pa. 154; Hildebrand v. Bowman, 100 Pa. 581; Imhoff's App. 119 Pa. 350.

*Mr. Owen P. Bricker*, for the appellee:

It would require a strong case of palpable error to justify this court in disturbing the auditor's finding that the assignor was guilty of the fraud charged against him: Harman's App.,

Opinion of the Court.

124 Pa. 624; Scheppers' App., 125 Pa. 598; Irwin's Est., 133 Pa. 1. That fraud is an established fact in the case. By attempting it, Kreider forfeited his right to exemption: Strouse v. Becker, 38 Pa. 190; Imhoff's App., 119 Pa. 350; Gilleland v. Rhoads, 34 Pa. 190; Huey's App., 29 Pa. 219. The fallacy of the position that, notwithstanding this fraud, the action of the appraisers entitled Kreider to it, and was an absolute and conclusive adjudication of his right, is shown by Mr. Justice STERRETT in Imhoff's App., 119 Pa. 350. And the attempt to distinguish that case on the ground that the contest there was between the plaintiff and defendant in an execution, presents a distinction without a difference. An assignee, by voluntary payments, cannot disturb the equities and relative rights of creditors: Trickett on Assignments, §§ 162, 163, 177; Keim's App., 27 Pa. 42. He makes a voluntary distribution, without consent of the creditors, at his peril.

OPINION, MR. CHIEF JUSTICE PAXSON:

The learned court below surcharged the accountant with the sum of $300, paid to the assignor under his claim of exemption. The ground of this surcharge was the fraud of the assignor. The authorities cited by the court fully sustain the position that if the debtor equivocates and dissembles, denies the ownership of that which he cannot hide, and embarrasses the officers of the law in the execution of their legal duties, he forfeits his right to exemption: See Strouse v. Becker, 38 Pa. 190; Huey's App., 29 Pa. 219; Gilleland v. Rhoads, 34 Pa. 187; Imhoff's App., 119 Pa. 350. No doubt exists about the law, and we think the facts fully sustain the findings of the learned judge.

It was urged, however, that, inasmuch as the assignee paid out the money without notice of the fraud, he acted in good faith and should not be surcharged. It is doubtless true that if the property claimed had consisted of personal estate, and the same had been duly appraised, set apart, and delivered to the assignor without notice of the fraud, the assignee would be protected. But, in this case, the claim for exemption was made out of real estate, a farm which sold for $4,210. It could only be paid out of the proceeds of such sale. The appraisers found it could not be divided. In such case, the action of the appraisers was not in the nature of an absolute and conclusive

Syllabus.

adjudication that the assignor was or would be entitled to the exemption out of the proceeds of the sale of the real estate when sold, without regard to what he might do in the meantime; in other words, it did not seat his claim either upon the land, or upon the fund realized from the sale thereof: Imhoff's Appeal, supra. The most that can be predicated of the action of the appraisers, is that it placed the assignor in a position to claim the exemption out of the proceeds of the sale of the real estate when it came to be distributed, provided he was otherwise entitled to it. If the assignee has paid the money over, he has done so prematurely, and is in the position of any other assignee or trustee who makes distribution of his own motion, and without the order or adjudication of the court. In such case, he distributes at his own risk.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.

