---

In re YOST.

(District Court, M. D. Pennsylvania. October 13, 1902.)

No. 118.

1. BANKRUPTCY—FRAUDULENT CONVEYANCE—EXEMPTION.

A bankrupt, while in failing circumstances, disposed of all his valuable assets, receiving a judgment note for part of the consideration. A judgment was entered on the note a few days after it was given, and the judgment was transferred to another on the record. Thereafter the bankrupt made an assignment for the benefit of creditors, and then attempted to discount the judgment so previously assigned, stating to the attempted transferee that he was afraid the original transfer would not stand, and that, while the assignee of the judgment had paid over the money, it was withheld so that if the bankrupt's creditors got hold of it it was to be refunded, otherwise the bankrupt was to have it. *Held*, that the original transfer of the judgment was fraudulent and void as to creditors of the bankrupt, and hence he was not entitled to his state exemption.

In Bankruptcy. Exceptions to report of referee allowing exemption.

Henry P. Fletcher, for exceptions.

W. R. Keefer and Geo. W. Atherton, for bankrupt.

ARCHBALD, District Judge. This record is in rather an unsatisfactory shape. The referee has found no facts, and I have therefore to pass upon the evidence which has been returned by him, without any knowledge of the witnesses by which to judge of their credibility. The exceptions to the allowance of the exemption are based on the alleged fraudulent transfer by the bankrupt of certain of his property just prior to the time he was put into bankruptcy. It seems that on December 19, 1901, being in failing circumstances, he disposed of all his available assets, and, among other things, of the machinery in his mill, to U. G. Stover for $650. Of this $300 was paid in cash, and a judgment note for $350 given for the balance,

which was made payable April 1st following. Judgment was entered in the common pleas of Franklin county on this note a few days afterwards, and on December 24th it was transferred of record to Joseph E. Lehman. It is claimed that this transfer was colorable and fraudulent, with the design on the part of Mr. Yost to put the note out of the reach of his creditors. As evidence of this the testimony of Mr. Stover is relied upon. He states that about the 1st of January, after the date of the assignment made by Yost under the state law for the benefit of creditors, Yost came to him, and asked him to discount the note, saying that he wanted to get the money to go away, and offered to throw off $15. Stover asked whether it had not been assigned to Lehman, and Yost said that it had been, but he was afraid the transfer would not stand; that while Lehman had paid over the money it was withheld, so that, if his creditors got hold of it, it was to be refunded, and, if not, he (Yost) was to have it. On the other hand, Mr. Keefer, who was Yost's attorney, testifies that at the time of the transfer to Lehman he paid Yost for Lehman $250 in cash, and retained the other $100 to apply on an indebtedness which Yost owed him (Keefer), thus making up the $350, the face of the note. Neither Lehman nor the bankrupt was called to give his version of the transaction, so that the evidence of Mr. Keefer is the only attempted contradiction of Stover. But it does not necessarily do so. There is in fact no great difficulty in reconciling the two. Admitting that the money was paid over as Keefer testifies, yet, if it was paid with the understanding that if the assignment to Lehman was avoided by creditors the money would be refunded, the transfer was not absolute, but conditional, and the validity of the arrangement is open to question.

The mere fact that the bankrupt while in failing circumstances disposed of this and other of his assets does not necessarily impress upon the transaction the stamp of fraud. As I had occasion to point out in Githens v. Shiffler (D. C.) 112 Fed. 505, a fair and open disposition by a man of his property is not necessarily fraudulent, although it may incidentally have the effect of leaving nothing which creditors can get hold of, and even though it was made for the purpose of preferring some obligations rather than others. It is only where the intent is to get the property out of the reach of creditors that it is void at law as well as by the statute of Elizabeth.

Notwithstanding this saving observation, however, I cannot escape from the conclusion that the transfer in the present instance was colorable only, and therefore covinous. Not only do we find the bankrupt dealing with the note as his own, and attempting to arrange with Stover for its payment at a discount, after it had been apparently assigned to Lehman, but we have his admission, according to the testimony to which I have alluded, that there was a special arrangement with regard to it, by which, although Lehman had paid over and parted with the face of the note ($350), the money was so held that he would get it back if creditors successfully attacked the transfer, while if it escaped them it was to go to Yost. If the parties themselves had such doubts about the validity of the transaction that they found it necessary to so provide, how much

more may we? If made in good faith and for a valuable considera-tion, there was no need of any further stipulation with regard to it. But when the possibility of its being challenged by creditors is recog-nized, and the money is to be so held by some one that it is to be-long to neither party until that question is disposed of, it is difficult to see how we can regard it as other than an attempt to put out of the reach of creditors, for the benefit of the bankrupt, an available asset, not yet due, which would otherwise go to them. This made it fraudulent, even though based on a full consideration. Ferris v. Irons, 83 Pa. 179. If it had been shown that the doubts which the parties experienced had reference to the legal authority of Yost to transfer the note in view of his failing circumstances and the somewhat stringent and not altogether understood provisions of the bankrupt law, a different question might be presented. But as it is I must regard the assignment as a fraudulent disposition of property by the bankrupt which forfeits his right to the exemption otherwise given him by the state law. Huey's Appeal, 29 Pa. 219; Imhoff's Appeal, 119 Pa. 350, 13 Atl. 279; In re Kreider's Estate, 135 Pa. 578, 19 Atl. 1073.

The exceptions are sustained, the report of the referee is set aside, and the case sent back, with instructions to disallow the exemption claimed by the bankrupt.