Healy v. Conner.

HEALY v. CONNER.

1. EXEMPTION: *Scheduling.*

In order to exempt property from sale under an execution from the Circuit Court, the defendant must file with the Clerk a proper schedule of it and see that the Clerk issues a supersedeas to stay the sale; unless the property be an improvement on the public lands, and resided on or cultivated by the defendant. This is not subject to sale under execution and need not be scheduled.

2. AMENDMENT. *Of pleading to correspond with the proof.*

When an imperfect pleading is not demurred to and the proof supplies its defects the pleading is to be considered as amended to conform to the proof and support the verdict

APPEAL from *Carroll* Circuit Court.

Hon. J. H. BERRY Circuit Judge.

*B. R. Davidson* for Appellant.

Having failed to properly schedule the property and obtain a supersedeas, Healy by purchase obtained title. *Norris v. Kidd*, 28 *Ark.*, 485.

The property was subject to execution by common law and by statute. *Freeman on Ex.*, sec. 175; *Gantt's Dig.*, sec. 2630.

The spirit of *Sec.* 2626, *Gantt's Dig.*, is that "*the right of pre-emption*" of a settler who resides upon or cultivates land shall not be sold. Appellee had no pre-emption

right. If this section was intended to protect the improvements as a *homestead* then it has been repealed by subsequent legislation. *See Const.* 1868 *and* 1874, *and subsequent acts; Pulaski Co. v. Downer,* 10 *Ark.,* 588; *Sedgwick on Stat. and Const. Law, p.* 126.

The demurrer which constituted the 2d paragraph of the answer was overruled. There remained then only the 1st paragraph, which admitted everything and denied nothing. It set up no defense, and the Court should have rendered judgment for plaintiff notwithstanding the findings.

### STATEMENT.

ENGLISH, C. J. This was an action of ejectment, brought by C. J. Healey, in the Circuit Court of Carroll county, against Al. Grissom and A. W. Conner, for possession of a hotel situated on a lot in the town of Eureka Springs.

The complaint alleges that "the plaintiff is the owner and entitled to the possession of the Grand Central Hotel (now known as the St. Elmo House) in the town of Eureka Springs, Carroll county, which was erected by defendant Conner, on land which belongs to the Government of the United States, and which is now standing as an improvement on public lands; which property was levied upon, sold and had been purchased by plaintiff as evidenced by a deed from the Sheriff of said county, a copy of which is filed herewith, &c., and which property is in possession of the defendants unlawfully, and unlawfully detained from plaintiff by them."

The Sheriff's deed made an exhibit to the complaint, shows that at the September term, 1880, of the Carroll Circuit Court, Mack & Co. recovered a judgment against A. W. Conner, upon which an execution issued, and was

levied by the Sheriff on "The Grand Central Hotel (now known as the St. Elmo House) in the town of Eureka Springs, &c., the said hotel building being an improvement made upon lands belonging to the United States, by said Conner, said lands on which said building is situate being public land, a part of the unentered domain of said United States." That the Sheriff advertised and offered the property at public sale, and it was purchased by B. R. Davidson, who transferred his certificate of purchase to C. J. Healy, and the deed conveys the property to him. It is dated August 12th, 1881.

Defendant Grissom disclaimed any interest in the property and denied that he was in possession of it, and was discharged.

Conner filed an answer in two paragraphs:

1st. Defendant admits it to be true, as alleged in plaintiff's complaint, that the house was sold at Sheriff's sale, and purchased by plaintiff. That defendant, who is a married man, and the head of a family, and a resident of the State, erected said building and occupied the same as his homestead, and for a tavern house. That said house is worth about $2,450. That the debt for which said land was sold was contracted since October, 1874.

2d. Defendant for further answer says that it is true as alleged that said improvement was erected upon lands belonging to the U. S. Government, and defendant demurs to said complaint, and says that the same was not subject to said levy and sale as alleged. Wherefore he prays judgment," &c.

The Court overruled the demurrer to the complaint.

The cause was submitted to the Court sitting as a jury, by consent of parties.

Plaintiff read in evidence the judgment of Mack & Co., against Conner, the execution issued thereon, return and

Sheriff's deed, made an exhibit to the complaint, and proved demand of defendant of possession of the hotel property before suit. Also proved by the Sheriff that the property was regularly advertised for sale under the execution, and no one forbid the sale. That there was no cultivation on the land in controversy. That it was covered by the hotel, and none of it capable of cultivation. There were several hundred houses on the forty acres subdivision of government land on which the hotel was situated, many of them erected as residences, and families living in them before the hotel was built. The hotel was within the corporate limits of the town of Eureka Springs, and on lot No. 11 on the east side of Main street in said town.

Defendant testified that he was the head of a family consisting of a wife and two children, a resident and citizen of Carroll county, resided in the town of Eureka Springs on the property in controversy, and was residing on it at the time the levy was made, and at the time it was sold under the execution. He went to Berryville, and had a schedule prepared by an attorney and presented it to the Clerk of the Carroll Circuit Court, who took it, and said he would attend to it as witness understood him, and witness returned home supposing the Clerk would do what was necessary to be done. The schedule was produced, and purported to contain all his property, real, personal and mixed—a large list of hotel furniture, a house and lot in Fayetteville, and the house and lot in Eureka Springs, known as the Grand Central Hotel.

Witness did not demand a supersedeas from the Clerk, or tender him his fees. He did not demand any fees. He owned a residence in Fayetteville, &c.

The Clerk testified that on the 21st of March, 1881, (five days before the sale) defendant gave him the sched-

ule read in evidence, and he told him he would look into it. He showed the schedule to some attorneys, and they told him it did not comply with the law, and advised him not to issue a supersedeas. Defendant did not demand a supersedeas. Witness did not see him after he handed him the schedule, and never told him he would issue a supersedeas, nor gave him any reason to believe he would.

Plaintiff asked the Court to declare the law to be as follows:

"1. That the improvement of public land, on which the defendant, a resident of the State and head of a family resides, may be legally, sold under execution, unless the defendant in execution file a schedule claiming the same as exempt, and obtain a supersedeas from the Clerk of the Court issuing the execution.

"2d. That one residing in improvements on public land, with no right of pre-emption, could not claim the improvements as exempt from execution, except by scheduling the same according to law.

"3d. That one electing to claim improvements on public land as a homestead, and exempt under Art. 12, Const. Ark., and filing a schedule, and failing to obtain a supersedeas, could not permit the same to be sold under execution without further opposition or notice to the purchaser, and insist in an action of ejectment, by the purchaser, that the same was not subject to execution."

The Court refused the above declarations of law, and declared the law to be as follows:

"That *Sec. 2626, Gantt's Digest,* is in full force and effect and the law is in favor of defendant in this case."

The Court found that the property was not subject to levy and sale under execution, and that the purchaser took no title.

Healy v. Conner.

Plaintiff filed a motion for judgment notwithstanding the finding of the Court, which was overruled. He also filed a motion for a new trial, which was refused.

Judgment was rendered for defendant, and plaintiff took a bill of exceptions and appealed.

OPINION.

I.   The Constitution of 1868 exempted from sale on execution, etc., personal property to the value of $2000, to be selected by the debtor, etc. 1. Exemption:

It also exempted a homestead not exceeding 160 acres in the county, or a lot in a town, city or village, to be selected by the debtor, etc.   *Art.* 12, *Sec.* 1-6. Homestead:

The schedule act of March, 28, 1871, (Gantt's Digest, Sections 2625–42) provides that "Whenever any resident of this State shall, upon the issue against him, for the collection of debt, of any execution or other final process of any court, desire to claim any of the exemptions provided for in Article twelve of the Constitution, he shall prepare a schedule, verified by affidavit, of the property which he claims as exempt under the provisions of said Article, and shall file the same with the Justice or clerk of the Court issuing such execution; and the said Justice or clerk shall thereupon issue a *supersedeas* staying any sale under such execution or final process, of the property in such schedule described," etc. Scheduling.

In *Norris et al v. Kidd*, 28 *Ark.*, 488, the Court said: "Our present Constitution says the homestead is to be 'selected by the owner,' but how, when and to whom he shall make application to select it, is not therein provided. The legislature, as it has the unquestioned power to do, has pointed out how, when and to whom the application to select shall be made." And the Court decided that a failure or neglect to select the homestead in the manner pointed out by the schedule

act was a waiver of the right; and having been neglected, a debtor could not set it up in an action of ejectment; that the exemption, if intended to be claimed, must be asserted by scheduling before the sale under execution. And this decision has been repeatedly followed. *Turner v. Vaughan*, 33 *Ark.*, 457; *Fritz v. Fritz* 32 *Ib.*, 327; *Euper v. Alkire & Co.*, 37 *Ib.*, 383.

So Article 9 of the present Constitution exempts from sale under execution personal property and a homestead to be selected by the debtor, not to exceed in value sums named. And the schedule to the Constitution provided that all laws then in force, which were not in conflict or inconsistent with the Constitution, should continue in force until amended or repealed by the General Assembly.

The schedule act of March 28, 1871, is not in conflict, or inconsistent with any provision of the present Constitution, and has not been repealed.

Appellee failed to schedule the hotel property in controversy, as a homestead, before it was sold under execution, in the manner contemplated by the statute.

He gave the clerk a schedule, but offered no fees, and did not demand a supersedeas, and the clerk being advised that it was not made out in compliance with the statute, did not issue a supersedeas. It was the duty of appellee to file with the clerk a properly prepared schedule, and see that a supersedeas was issued.

The first paragraph of the answer which set up the homestead claim, did not allege that the hotel property was properly scheduled and a supersedeas issued before the sale under the execution, nor was this omission cured by the evidence. The first ground of defence was not, therefore, made out.

II. The second paragraph of the answer was a mix-

ture. It admitted that the hotel was an improvement
on public land, as alleged in the complaint; demurred to
the complaint, and averred that the property was not
subject to levy and sale under execution. There was no
allegation that appellee resided on or cultivated the land
at the time of the issuance of the execution. It was
proved that he resided upon it, but that it was not cul-
tivated, and was incapable of cultivation.

The Court decided, in effect, that it was not necessary
to schedule the property; that *section* 2626 *of Gantt's
Digest* was still in force; that the property was not sub-
ject to execution, and the law was in favor of appellee.

Section 23, Chapter 60, title *Execution,* of the *Revised
Statutes,* (approved March 3, 1838) enacted that "all im-
provements on the public lands of the United States"
should be subject to be seized and sold under any execu-
tion upon any judgment, order or decree of a Court of
Record.

But by act of December 5, 1840, it was enacted that:

" Hereafter it shall not be lawful to levy upon and sell
under any execution or decree, any improvement or
right of pre-emption upon the public lands within this
State, any law, usage or custom to the contrary, not-
withstanding; *provided, however,* that no other improve-
ment on the public lands, as aforesaid, shall be so ex-
empt except those on which the defendant may reside,
or cultivate, at the time of issuing such execution. *Acts
of* 1840, *p.* 9.

This act became Sec. 23, Chapter 67 of English's
Digest, title *Execution*; Sec. 26, Chapter 68 of Gould's
Digest, same title, and its substance was carried into
Gantt's Digest as Sec. 2626, title *Execution.* This Digest
was made and published after the adoption of the Con-
stitution of 1868, and the digester and examiner did not

regard the act as repealed by or in conflict with the provisions of Art. XII, title EXEMPTED PROPERTY, of that Constitution.

It seems to have been the public policy of the State to make it unlawful to levy upon and sell, under any execution, any improvement or right of pre-emption upon the public lands on which the defendant may reside or cultivate at the time of issuing the execution.

It was not necessary for the appellee to schedule the improvement on the public land in question, on which he resided when the execution issued, because the schedule act applies in its terms to exemptions provided for by the Constitution only. The debtor must schedule such articles of personal property and such homestead land as he may select and claim to have exempted under the provisions of the Constitution; but he need not schedule an improvement on the public lands upon which he resides or cultivates, because, as matter of public policy, the statute makes it unlawful to levy upon and sell such improvement under any execution. Personal and real property generally are subject to sale under execution, unless scheduled on claims of exemption, but improvements on the public lands, on which debtors reside or cultivate, are not subject to execution—the law forbids it.

2. AMEND-MENT: Of pleading to conform to proof.

III. The second paragraph of the answer did not allege, as above shown, that appellee resided upon or cultivated the improvement in question at the time the execution issued, but there was no demurrer to it, and on the trial appellee was permitted to prove, without objection by appellant, that he erected the hotel on public land and resided in it before and after the issuance of the execution, levy and sale; and under the Code practice the Court must regard the answer as amended to

correspond with the proof, as held in *Hanks v. Harris*, 29 *Ark.*, 323. Hence appellant was not entitled to judgment *non obstante veredicto.*

Affirmed.