## In re FALCONER.

(Circuit Court of Appeals, Eighth Circuit.  June 18, 1901.)

### No. 23.

BANKRUPTCY—EXEMPTIONS—SELECTION.
  Under the statute of Arkansas (Sand. & H. Dig. c. 78, §§ 3716, 3718), which permits a debtor who is married or the head of a family to select and hold as exempt "specific articles," not exceeding in value the sum of $500, a bankrupt who is a married man may claim his exemption in money as well as in property; and where, at the time of filing his schedule, he claims articles of property of less value than $500, he may amend such schedule to include a sum of money subsequently surrendered to the trustee by a creditor, as the proceeds of property transferred to him by the bankrupt and constituting a preference, and may at the same time claim the remainder of his exemption therefrom.

  Sanborn, Circuit Judge, dissenting.

Petition for Review of Order of the District Court of the United States for the Western District of Arkansas, in Bankruptcy.

William A. Falconer, in pro. per.

Homer C. Mechem and Edgar E. Bryant, for respondent.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge. The petitioner, William A. Falconer, seeks by this proceeding to review an order made by the United States district court for the Western district of Arkansas, allowing J. M. Hamilton, who had previously been adjudged a bankrupt, the sum of $414, as an exemption out of certain moneys which had been

paid to the petitioner as trustee of the bankrupt's estate, under the following circumstances:

Hamilton was adjudged a bankrupt on March 17, 1899, under an involuntary petition in bankruptcy which was filed against him by three of his creditors. On March 24, 1899, he filed his schedules in bankruptcy, wherein he claimed as exempt certain specific articles of personal property of the aggregate value of $86, and further stated that he was a married man and the head of a family, and a citizen and resident of Johnson county, in the state of Arkansas. Within four months preceding the commencement of bankruptcy proceedings Hamilton had conveyed to the Bank of Clarksville certain personal property to secure an indebtedness which he owed to it, the conveyance being made under such circumstances that it operated as a preference. Prior to the institution of bankruptcy proceedings the personal property so transferred had been sold by the bank, for which it had received the sum of $565.25. At the first meeting of Hamilton's creditors, to wit, on April 10, 1899, the Bank of Clarksville presented its claim against the bankrupt amounting to the sum of $983.25, and asked leave to surrender the preference which it had received and to prove the entire amount of its claim as an unsecured debt. Such leave was granted, and the bank thereupon paid to the trustee the sum of $565.25, which it had received from the sale of the personal property aforesaid. On the same day that the money in question was paid to and received by the trustee, the bankrupt filed an amended schedule of assets, embracing therein the sum of $565.25 which had been paid to the trustee, and claimed a part thereof, to wit, $414, as exempt. Such claim on the part of the bankrupt was allowed by the trustee, and the sum so allowed, in addition to the specific articles of personalty theretofore claimed as exempt, increased his total exemptions to the full amount allowed by law. Exceptions were taken to the latter allowance of $414, by one of the bankrupt's creditors, but the district judge, after a hearing had upon the exceptions, approved the action of the trustee in making the same. It is this latter order which we are called upon to review.

Section 6a of the bankrupt act of July 1, 1898 (30 Stat. c. 541, p. 548), declares that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for six months, or the greater portion thereof, immediately preceding the filing of the petition"; and the laws of Arkansas on the subject of exemptions, which were in force when the bankruptcy proceedings against Hamilton were inaugurated, declare, in substance (vide Sand. & H. Dig. Ark. c. 78, §§ 3716, 3718), that any resident of the state who is married or the head of a family may select specific articles, not exceeding in value the sum of $500, in addition to his wearing apparel and that of his family, and that the same shall be exempt from seizure on attachment or sale on execution or other process emanating from any court, to enforce a debt created by contract. They also provide, in substance, that whenever any resident of the state, upon the issuance against him, for the collection of a debt created by contract, of an execution

or other process against his property, shall desire to claim any of the exemptions allowed by the constitution and laws of the state, he shall prepare a schedule, verified by affidavit, of all of his property, including moneys, rights, credits, etc., and specify the particular property which he claims as exempt, and that, after giving five days' notice in writing to the opposite party, his agent or attorney, he shall file the same with the justice or clerk issuing the process, and that the justice or clerk shall thereupon issue a supersedeas staying any sale or further proceeding under such process against the property of the debtor in such schedule described, and that no alias execution shall be levied on property which has been so relieved from seizure until one year after the date of the filing of the aforesaid schedule of exemptions.

It is insisted by the petitioner that the bankrupt should have made his claim to be allowed the amount of his statutory exemption out of the proceeds of the property which had previously been conveyed to the Bank of Clarksville, when he filed his schedule on March 24, 1899, and that because he failed to make such a claim at that time he thereby waived his right to resort to that fund for his exemption. We think, however, that this position is untenable. When the bankrupt filed his original schedule it was not known that the proceeds of the property previously conveyed to the bank would ever become a part of the bankrupt's estate. The bankrupt himself could not challenge the validity of that conveyance, and whether the fund would become a part of his estate in bankruptcy depended altogether upon such action as the trustee might take to recover it, and upon the outcome of litigation brought for that purpose, if the fund was not voluntarily surrendered by the preferred creditor. Under these circumstances, we think that the bankrupt was under no obligation at the time he filed his original schedule to claim his exemption out of the fund in controversy, or to indicate his intention to do so if the fund should be recovered by the trustee or surrendered voluntarily by the creditor. In making his claim for exemption in the first instance his choice was necessarily confined to such property as he could himself lay claim to, at the time, as forming a part of his estate. His right to select other property then held by third parties, whose title could only be challenged by the trustee, arose, and in the nature of things could be exercised only, when the title by which it was held was vacated, and the property became actually, as well as potentially, a part of his estate. It was not until then that the bankrupt court could exercise dominion over the fund in controversy by directing a part thereof to be paid to the bankrupt on account of his exemption; and, as the bankrupt acted promptly in making his claim upon the fund as soon as it was surrendered to the trustee, we perceive no substantial reason for rejecting the claim because it was not interposed at an earlier date or when the original schedule was filed.

The petitioner further insists that, under the Arkansas statute relating to exemptions, the bankrupt was required to select specific articles of personalty to make up his exemption, and that under no circumstances can he be permitted to take the proceeds of property,

once a part of his estate, but which has been sold and reduced to money. This contention appears to be based wholly on two decisions of the supreme court of Arkansas, namely: King v. Ruble, 54 Ark. 418, 16 S. W. 7, and Surratt v. Young, 55 Ark. 447, 18 S. W. 539. In the first of these cases (King v. Ruble), it was held that the reservation by an insolvent assignor from the proceeds of personal property assigned, of a sum of money equal to his exemptions, is an unlawful benefit to the assignor at the expense of his creditors, and that such a reservation will not be allowed. In the other case (Surratt v. Young) it was decided that when personal property is attached the debtor, if he has an opportunity to do so, must select those articles of personalty which he chooses to hold as exempt, and that he cannot claim his exemption out of the proceeds of the sale after the attached property has been sold under judicial process. The reasons assigned for these decisions were that it would operate to the prejudice of the creditors if debtors were allowed to stand by and suffer their property to be sold at the expense of their creditors, and subsequently claim their entire exemption out of the proceeds. Neither of these decisions holds, however, nor does the local statute so declare, that a debtor may not claim his exemption in money as well as in property, and the present case seems to be one in which the bankrupt should receive his exemption in money. If he had himself sold the property, as he had an undoubted right to do at the time it was sold by the Bank of Clarksville, and had had the proceeds of the sale in his possession when he was adjudicated a bankrupt, he could doubtless have claimed $500 thereof as exempt, and we can perceive no substantial reason for denying his right to claim a part of the fund in controversy when it appears that prior to the commencement of bankruptcy proceedings the property out of which the fund arose had been sold by a third party, to whom he had transferred it as security for an honest indebtedness, and such third party has surrendered the fund to the trustee. In the state of Arkansas it is held that when land in which a homestead right inheres is conveyed by a debtor in fraud of his creditors, and the conveyance is subsequently annulled at the instance of creditors, the debtor does not thereby forfeit his exemption, but may assert his right thereto, and may have his homestead set apart out of the land, even as against creditors who have succeeded in annulling the fraudulent conveyance. Carmack v. Lovett, 44 Ark. 180. A similar doctrine prevailed under the bankrupt law of 1867. It was uniformly held, in controversies arising under that act, that, if the assignee recovered property which had been conveyed in fraud of the provisions of the act, the bankrupt could successfully assert any homestead exemption right which he originally possessed in the property recovered by the assignee, and that the right was not forfeited by the debtor's fraudulent conduct. Cox v. Wilder, 2 Dill. 45, Fed. Cas. No. 3,308; In re Detert, 7 Fed. Cas. 545 (No. 3,829); McFarland v. Goodman, 16 Fed. Cas. 90 (No. 8,789); Penny v. Taylor, 19 Fed. Cas. 194 (No. 10,957); In re Poleman, 19 Fed. Cas. 918 (No. 11,247). The same doctrine has been approved by the circuit court of appeals for the Sixth circuit in a case arising under

the present bankrupt law (In re Tollett [C. C. A.] 106 Fed. 866), wherein it was held that the conveyance of property without fraud in fact, even though there was constructive legal fraud, does not bar the right of the bankrupt to claim a homestead in the property when it is recovered by the trustee.

We are of opinion, therefore, that Hamilton did not forfeit his right to claim his exemption out of the personal property transferred to the Bank of Clarksville, although such transfer at the time it was made operated as a preference. It was not fraudulent in fact, the conveyance having been made to secure an honest indebtedness due to the bank, but was simply voidable under the provisions of the existing bankrupt law. It ought not to be held, we think, that a transfer of personal property which is affected with no other vice than that it falls within the prohibition of the bankrupt law against preferring creditors, operates as a forfeiture or waiver of the bankrupt's right to claim such exemption as the law allows out of such property or its proceeds when it has been restored to his estate and comes into the possession of his trustee. It would certainly be a harsh rule, and one that is not consonant with the humane purpose which has led to the enactment of exemption laws, to hold that if a bankrupt makes a payment or transfers property by way of security to one of his creditors, and such money or property is subsequently recovered by his trustee and becomes a part of his estate which the bankrupt court is called upon to administer, no part of the money or property so recovered can be set apart to the bankrupt to satisfy his claim for exemptions, although he may have no other property out of which the amount of his statutory exemption can be paid. The present bankrupt law does not make it a ground for refusing a discharge that the bankrupt has transferred property to one or more of his creditors which operates as a preference, and we perceive no adequate reason for holding that such a transfer of property places the same, or the proceeds thereof if it has been sold by a creditor, beyond the reach of a claim for exemptions when it is restored to his estate. No bankrupt should be deprived of his exemptions by a narrow and strict interpretation of laws which were passed for his benefit and prompted by a wise and humane public policy. The order made below was, in our judgment, a proper order, and the petition to review the same is accordingly dismissed.

SANBORN, Circuit Judge (dissenting). May a bankrupt by preferring a favored creditor transform a statutory exemption of specific articles of personal property of the value of $500 to be selected by him into a preferential lien upon a part or all of his property for $500 in cash? The opinion of the majority is, in effect, an affirmative answer to this question, while, in my opinion, it should be answered in the negative. This bankrupt was entitled to an exemption of specific articles of personal property to be selected by him, and to that exemption only. Without making any selection, he made a preferential conveyance of his goods to a creditor. This creditor sold these goods for $565.25, deducted $23.75 expenses of sale, surrendered the balance to the court, and the court has applied this balance first to

the payment of $414 claimed by the bankrupt as a part of his exemption, and the remainder, $127.50, to the benefit of the creditors. The result is exactly what it would have been if the bankrupt had been invested with a first lien upon all his property to secure the payment to him of $500 in cash, and this result appears to me to be unwarranted by the law, unjust, and inequitable.

1. The exemption which the bankrupt is here enforcing is granted to him by the constitution and statutes of Arkansas in these words: "The personal property of any resident of this state who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars, * * * shall be exempt." Section 2, art. 9, Const. Ark. This selection is required to be made by means of an affidavit of the debtor "specifying the particular property which he claims as exempt." Sand. & H. Dig. § 3718. A debtor is legally and morally bound to pay his debts, and the rule is that all his property not expressly exempt by law is subject to appropriation by his creditors to satisfy their just demands. Exemptions constitute statutory exceptions to this rule of morals and of law. They are grants of special privileges on certain conditions, and if a debtor would avail himself of them he must comply strictly with the conditions and pursue the terms of the grant. Moreover, these statutory exceptions must be fairly and reasonably interpreted, so as to effect the evident purpose intended, and to prevent the plain mischiefs deprecated by the legislators. In the light of these considerations, the legislative permission to a debtor to select and retain a tract of land of the value of $1,500 as a homestead cannot be lawfully construed to be a warrant for him to sell, or to authorize the sale of, a large part or all of his real or personal property, and to take from the proceeds of this sale $1,500 in money as a homestead. Nor is it perceived how the grant by the state of Arkansas to a debtor of the right to select and retain specific articles of personal property free from the claims of his creditors can be lawfully held to empower him, without making any selection, to sell, or to authorize a favorite creditor to sell, a large part or all of his general estate, and to take $500 in money out of the proceeds as the specific articles selected by him as exempt. The constitution and statutes of Arkansas neither authorized this bankrupt to sell, nor to empower the Bank of Clarksville to sell, his unselected personal or real property to raise money to pay him $500 in preference to all his creditors. It seems to me that here is one of the fundamental errors of the majority. This bankrupt was entitled to specific articles of personal property selected before their sale, and to those only. If he had selected and set these articles apart before the Bank of Clarksville made the sale, and if their proceeds had been kept separate from the proceeds of his unexempt property, it may be that he could have been allowed these proceeds. But when, without selection, he conveyed the property he might have claimed as exempt, and permitted this to be sold, and its proceeds to be mixed inextricably with property which he could not have claimed as exempt, he waived and lost all claim to this exemption, and his carelessness and disregard of the law should not be permitted to transform his lost right to select and retain

specific articles into a preferential lien upon the proceeds of his un-selected property.

2. This exemption is granted by the constitution and statutes of Arkansas. The construction by the supreme court of that state of that constitution and of those statutes in this case, in which no question of general or commercial law or of right under the constitution or laws of the United States is involved, is binding upon this court, and ought to be followed. Madden v. Lancaster Co., 65 Fed. 188, 192, 12 C. C. A. 566, 570, 27 U. S. App. 528, 536; Dempsey v. Township of Oswego, 4 U. S. App. 416, 435, 2 C. C. A. 110, 112, 51 Fed. 97, 98; Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, 53 Fed. 415; Travelers' Ins. Co. v. Oswego Tp., 19 U. S. App. 321, 327, 7 C. C. A. 669, 674, 59 Fed. 58, 61; Claiborne Co. v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489, 28 L. Ed. 470; Bolles v. Town of Brimfield, 120 U. S. 759, 763, 7 Sup. Ct. 736, 30 L. Ed. 786; City of Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260. That court has expressly decided that a debtor who, without selecting specific articles of personal property which he might have claimed as exempt under this constitution and these statutes, permits them to be sold indiscriminately with others which he could not have claimed, cannot be lawfully permitted to receive from the proceeds of the mixed property the value, or any part of the value, of the articles which he might have selected and retained as exempt. King v. Ruble, 54 Ark. 418, 16 S. W. 7; Surratt v. Young, 55 Ark. 447, 18 S. W. 539.

In Surratt v. Young, which is the last decision of the Arkansas court upon this question, the debtor had made an assignment of personal property for the benefit of his creditors. A creditor had attached the assigned property, and had prayed for its sale pending the litigation. The debtor had consented to the sale. The property was sold for the sum of $506.65. The assignment was avoided. The debtor then filed his schedule, in which he claimed specific articles of property which had not been attached, of the value of $29.50, and $470 in cash from the proceeds of the sale. After citing the constitution and the statutes, the court said, among other things:

"These provisions seem to require that the debtor shall claim his exemptions in specific articles to be selected by him. Most of the authorities bearing upon the question, 'When must the selection be made?' hold that it must be made in a reasonable time, and they all seem to agree, as far as we have examined, that as a rule the selection must be made before the sale of the property, which is said, in most of the cases, in reference to a sale of the property attached on final process. It would seem that the claim of exemption should be made in accordance strictly with the requirements of the statute, and in apt time, that the debtor may have the benefit of the humane provisions of the law in reference to exemptions, and that the creditor may not be prejudiced in his rights. Prima facie all the property of the debtor is subject to sale on execution for the payment of his debts. But the constitution confers upon him the privilege of claiming specific articles of his property as exempt from execution, and the statute points out particularly the manner in which this must be done, and provides that when it is thus done a supersedeas shall be issued to prevent the sale of the property thus selected as exempt. If the debtor were permitted to stand by and see his property sell without claiming his exemptions in specific articles, and then be allowed to claim the amount in

value of his exemptions out of the proceeds of the sale of his property, it is not difficult to see how he might work this to the prejudice of his creditor, and how an improvident and thriftless man, by permitting the sale of his property exempt by law from execution, and necessary for the use of his family, might thwart the purpose of the law in securing the right to a debtor to claim his, exemption."

How much more may a debtor use his privilege to the prejudice of his creditor, and to thwart the purpose of the law, if he may convey his unselected property to a favored creditor, and permit him to sell it to raise money for his benefit. The judgment of the supreme court of Arkansas was that the debtor was entitled to no share of the proceeds of the sale, and in support of its decision it cited Weaver's Appeal, 18 Pa. 309; Miller's Appeal, 16 Pa. 303; King v. Ruble, 54 Ark. 418, 16 S. W. 7; Norris v. Kidd, 28 Ark. 499; Healy v. Conner, 40 Ark. 352; Chambers v. Perry, 47 Ark. 400, 1 S. W. 700; Brown v. Peters, 53 Ark. 182, 13 S. W. 729. This decision of the supreme court of Arkansas appears to me to be reasonable, right, applicable, and controlling in this case.

3. It is an established principle, in support of which the authorities are uniform, that identification and separation of the exempt articles is an indispensable condition of the exercise of the right of exemption. If, through any act or omission of the debtor, the articles which he might have claimed as exempt have become so mixed with those which he could not claim that the former can be no longer identified and separated, the right to the exemption is gone. Freeman in his work on Executions states this rule in these words:

"If exempt goods be so mixed with others that they can no longer be identified, the right of exemption is lost. The claimant must always be able to point out the property claimed. The exempt and nonexempt property having been inextricably blended, the exemption must necessarily be denied as to the whole; else the creditor is compelled to suffer, and the debtor permitted to profit, by the act or neglect of the latter." Freem. Ex'ns, § 214a.

Smith v. Turnley, 44 Ga. 243, 248; Miller's Appeal, 16 Pa. 300, 303; Miller v. Sherry, 2 Wall. 237, 248, 17 L. Ed. 827; Norris v. Kidd, 28 Ark. 485, 499; Healy v. Conner, 40 Ark. 352, 358; Chambers v. Perry, 47 Ark. 400, 403, 1 S. W. 700; Friedman v. Sullivan, 48 Ark. 213, 215, 2 S. W. 785.

The bankrupt is barred by this rule from taking and retaining from the proceeds of this sale the $414 which has been allowed to him. His act in transferring his goods to the Bank of Clarksville, and his neglect to select from the articles transferred those he claimed as exempt before their sale, have estopped him from charging the proceeds of this sale with the amount of the value of his exemption. He may not thus impose upon his creditors the expenses of the administration and sale of the property he might have claimed as exempt, and the necessary loss of a forced or speedy sale, while he secures to himself a first lien upon his unselected property, that was never given him by the law, for $500 in cash. There is nothing in the opinions of the courts in the authorities cited by the majority in conflict with this position. Those decisions all treat of cases in which the bankrupt was able to identify the specific property or the proceeds of

the specific property which he was entitled to claim as exempt. In the case entitled In re Detert, 7 Fed. Cas. 545 (No. 3,829), the insolvent conveyed his homestead and other property. He was entitled to a homestead not exceeding in value $1,500. The assignee in bankruptcy recovered the property conveyed, and it was sold. The homestead was, however, sold separately for the sum of $725. The bankrupt applied for an allowance out of the proceeds of the sale of his property of the sum of $1,500, the value of the homestead exemption which he was permitted to specify and retain by the law. The court denied his application, and allowed him only what his homestead yielded, the sum of $725. In all the other cases cited by the majority in support of their view,—Cox v. Wilder, 2 Dill. 45, Fed. Cas. No. 3,308; McFarland v. Goodman, 16 Fed. Cas. 90 (No. 8,789); Penny v. Taylor, 19 Fed. Cas. 194 (No. 10,957); In re Poleman, 19 Fed. Cas. 918 (No. 11,247), and In re Tollett, 3 Nat. Bankr. N. 454, 105 Fed. 425,—the claim of the bankrupt which was allowed was for the specific land constituting the homestead, which he identified and claimed, and his claim was made and allowed before the property was sold. No authority that has been cited or found goes further than to hold that where a bankrupt can identify and set apart specific exempt property, or the proceeds of that very property, after a preferential conveyance thereof has been avoided, he may yet assert his claim to it. On the other hand, the authorities which treat of the question uniformly hold, so far as I can discover, that when a bankrupt has inextricably mixed the property which he might have claimed as exempt with that which he could not have claimed, and has induced or permitted a sale thereof so that it is impossible to separate the proceeds of the former from those of the latter, he has thereby waived and lost his right to any exemptions in the mixed property or its proceeds, and has not promoted himself to the position of a preferential lienholder upon all the property he has authorized to be sold. Thus, in Weaver's Appeal, 18 Pa. 307, 309, the statute granted to the debtor an exemption of the value of $300 in real estate or specific articles of personal property to be selected by him. He specified articles of property of the value of $64.17, and after the sale of his real estate claimed the balance of his exemption out of the proceeds of the sale, and the court below allowed him therefrom the sum of $235.83. The supreme court of Pennsylvania reversed the order of allowance, and held that the omission of the debtor to specify the property he claimed as exempt before it was sold, and its proceeds inextricably mixed with the proceeds of the other property, was a waiver of all the advantages of the exemption. This, as we have seen, is the rule adopted and emphatically sustained by the decisions of the supreme court of Arkansas in Surratt v. Young, 55 Ark. 447, 449, 18 S. W. 539, and King v. Ruble, 54 Ark. 418, 421, 16 S. W. 7, and it ought to prevail in this case.

For the reasons which have now been briefly stated, I am of the opinion that the order allowing the bankrupt $414 out of the proceeds of the mixed property, which he conveyed and permitted to be sold without selecting any exemptions from it, was erroneous, and should be reversed.