### BASHINSKI et al. v. TALBOTT.

(Circuit Court of Appeals, Fifth Circuit. December 9, 1902.)

#### No. 1,169.

1. BANKRUPTCY—EXEMPTIONS—ASSIGNED PROPERTY.

A bankrupt may claim his exemptions allowed by the laws of Georgia from the proceeds of a judgment which he assigned to a trustee for the benefit of creditors, although such assignment constituted a preference under the bankruptcy act, where the assignee never made any attempt to obtain the money or any claim thereto, but after the adjudication in bankruptcy it was paid over to the trustee, by direction of the court, by the bankrupt's attorney who had collected the same.

Pardee, Circuit Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of Georgia.

In Bankruptcy. On petition to revise.

Geo. S. Jones (T. S. Felder, C. A. Turner, and Isaac Hardeman, on the brief), for petitioners.

Washington Dessau (Nathaniel E. Harris and Chas. H. Hall, Jr., on the brief), for respondent.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. Ellis M. Talbott, the respondent, was the owner of a certain judgment against R. A. Lancaster. Before the proceedings in bankruptcy he made the following transfer of the judgment:

"For value received, I hereby transfer and assign to L. S. Worsham, trustee, all my interest in a judgment obtained in my favor in the case of Ellis M. Talbott v. R. A. Lancaster, Receiver, in the United States circuit court for the Western division of the Southern district of Georgia."

On the 23d of August, 1900, before any collection had been made on this judgment, a petition in bankruptcy was filed against Talbott, and on January 21, 1901, he was adjudged a bankrupt. On February 1, 1902, Talbott (he had been absent from the state of Georgia

for several months) filed schedules and asserted a claim to exemptions. The trustee in bankruptcy set apart to him as exempt several articles, valued at $37.50, and $1,562.50 in money, the total exemptions being $1,600. The creditors filed objections to this allowance of exemptions. The objections were overruled by the referee, and the referee's ruling was affirmed by the district court. 116 Fed. 417. The money which was allowed the bankrupt as exempt was collected on the Lancaster judgment, which had been assigned to Worsham. The case is brought here on petition to revise the decree of the district court, and it is contended that the court erred in allowing the exemptions, because the bankrupt had transferred, prior to bankruptcy, the judgment on which the money set apart to him was collected. It appears from the record that no delivery of the instrument assigning the judgment was ever made to Worsham as assignee of the judgment. The judgment was collected, and the proceeds remained for some time in the hands of R. C. Jordan, the attorney of record for Talbott in the court where the judgment was obtained. Worsham, the assignee of the judgment, never made any effort to reduce the money to his possession. After the proceedings in bankruptcy against Talbott had begun, Jordan, under direction of the court, paid the proceeds of the judgment, less his fee, to the trustee in bankruptcy. Jordan at the time he was directed to pay the money to the trustee held the same as attorney for Talbott.

The following is the statute under which the exemption was claimed and allowed:

"There shall be exempt from levy and sale, by virtue of any process whatever, under the laws of this state, except as hereinafter excepted, of the property of every head of a family, or guardian, or trustee of a family of minor children, or every aged or infirm person, or person having the care and support of dependent females of any age who is not the head of a family, realty or personalty, or both, to the value in the aggregate of sixteen hundred dollars. And no court or ministerial officer of this state shall ever have jurisdiction or authority to enforce any judgment, execution or decree against the property set apart for such purpose, including such improvements as may be made thereon from time to time, except for taxes for the purchase money of the same, for labor done thereon, for material furnished therefor, or for the removal of encumbrances thereon." 2 Code Ga. 1895, § 2827.

This statute was in force when the petition in bankruptcy was filed, and it therefore governs the amount of exemptions to which the bankrupt is entitled. Section 6, Bankr. Act.

It is contended by the petitioners that the effect of the assignment of the judgment is to deprive the bankrupt of any right of exemption in the money collected on it, and that this contention is supported by the supreme court of Georgia in McDowell v. McMurria, 107 Ga. 812, 33 S. E. 709, 73 Am. St. Rep. 155. In that case it was decided that a deed made to defraud creditors, though void as to them, is good between the grantor and grantee, and that the former, after executing such deed, has no title to the property thereby conveyed, and therefore cannot have the same set apart and exempted as a homestead under the laws of Georgia. "In attempting to place his property beyond the reach of his creditors," said the court, "he has placed his exemption beyond his own reach." That case was one in which the grantor was guilty of actual fraud. He conveyed his

property to a trustee for the benefit of his children, with the intent and purpose to hinder, delay, and defraud his creditors. The creditors, by suit, sought to avoid the conveyance and condemn the property to the payment of their claims. This appears clearly from the record, although the court said it was "very meager and imperfect." The main point involved in the case was the construction of a decree previously rendered. The decree had adjudged that a certain deed, it having been made to defraud creditors, was null and void, and that it be delivered into court and canceled. The court held that, when nothing more appears, such decree will be construed as declaring the deed to be null and void as to the complaining creditors, and not as adjudicating the invalidity of the instrument as between the parties thereto. This was held on the application of the familiar doctrine that a fraudulent deed, although void as to creditors of the grantor, is good as against the grantor, his heirs, executors, and administrators and parties claiming under the grantor.

But is that principle applicable here to defeat the bankrupt's claim of exemptions? Here there has been no suit against the assignee of the judgment to avoid its transfer. The transfer of the judgment to Worsham was not made to defraud creditors. Its purpose was, as shown by the record, that Worsham should collect the judgment as trustee or agent for Talbott, and pay the proceeds to Talbott's creditors. It does not appear that Worsham ever took any steps to obtain the money collected on the judgment. He asserts no claim to the money. No claim is asserted in this case under the transfer of the judgment. The proceeds of the judgment having come into the hands of the trustee in bankruptcy as the property of the bankrupt, he clearly holds them for administration and distribution under the bankruptcy law, and not under the assignment of the judgment. It would seem to us unjust and contradictory to hold that the funds were the bankrupt's for administration and distribution among the creditors under the bankruptcy law, and yet that the bankrupt was not entitled to exemptions allowed by the same law. Can it be his money under the section relating to its distribution among his creditors, but not his money under the section allowing exemptions?

This is not a case in which the trustee in bankruptcy has sued for and recovered property which had been fraudulently transferred by the bankrupt. In such case it might be contended that a plaintiff who attacked the transfer in equity obtained a lien that would not be displaced by a claim of exemptions asserted after the transfer was avoided by decree. Here no suit has been brought against Worsham, the assignee of the judgment. He has neither held nor asserted any adverse claim against the petitioning creditors. The case is wholly unlike McDowell v. McMurria, supra.

In Pendleton v. Hooper, 87 Ga. 108, 13 S. E. 313, 27 Am. St. Rep. 227, it was held that the claim to exemption was not defeated by the fact that the claimant had parted with the title to his land by a deed of gift, he not having parted with the possession. In that case, Bleckley, C. J., speaking for the court, asked the pertinent question: "How, then, can the land be consistently treated as the property of the debtor for the purpose of subjecting it to sale, and not so treated

for the purpose of exempting it?" See, also, Whitehead v. Mundy, 91 Ga. 198, 17 S. E. 287. There are other cases which tend to sustain our conclusion, but we will not lengthen this opinion by quoting or discussing them. In re Tollett, 46 C. C. A. 11, 106 Fed. 866, 54 L. R. A. 222; In re Falconer, 49 C. C. A. 50, 110 Fed. 111; Rice v. Nolan, 33 Kan. 28, 33, 5 Pac. 437.

The statute allows the exemption to the head of a family. It was clearly the intention of the legislature to allow it as a support or benefit to the family of a distressed or insolvent debtor. The statute should be liberally construed to enforce the legislative intent. The courts should be reluctant to deprive the debtor's family of the benefit of the statute, on account of an act of the debtor which does not clearly demand such deprivation. We would, of course, follow the decisions of the supreme court of Georgia in construing the exemption statutes of that state. We find no decision of that court directly applicable to the state of facts presented in this record, but we think the principles announced in some of the cases we have cited tend to sustain our conclusion.

The decree of the district court is affirmed.

PARDEE, Circuit Judge (dissenting). On the 3d of May, 1900, Ellis M. Talbott made the following transfer:

"For value received I hereby transfer and assign to L. S. Worsham, trustee, all my interest in the judgment obtained in my favor in the case of Ellis M. Talbott v. R. A. Lancaster, Receiver, in the United States circuit court for the Western division of the Southern district of Georgia. [Signed] Ellis M. Talbott."

On the 25th day of August following I. Bashinski and other creditors of Ellis M. Talbott filed their petition in the bankruptcy court, praying that Ellis M. Talbott might be adjudicated a bankrupt on the ground that he, while insolvent, had transferred certain of his property, to wit, an execution in favor of said Ellis M. Talbott against R. A. Lancaster, and which was evidenced by a decree of the United States circuit court for the Western division of the Southern district of Georgia, amounting to about the sum of $3,000, which transfer was alleged to be an act of bankruptcy and, as a preference, void under the bankrupt law. Upon this petition the said Ellis M. Talbott was finally adjudicated a bankrupt.

On the 22d day of January, 1901, various delays occurring on account of the nonresidence of said Talbott, he finally filed on the 1st of February, 1902, his schedules, wherein he showed, among other property turned over to L. S. Worsham for the benefit of creditors of Talbott & Palmer, the said judgment in favor of Ellis M. Talbott against R. A. Lancaster, receiver. In the meantime, and while the above proceedings were pending, a trustee was appointed, who, in March, 1901, instituted proceedings against one R. C. Jordan, an attorney at law, to recover from him the proceeds of the judgment in the case of Talbott v. Lancaster, which resulted in the recovery from said attorney, as proceeds of said judgment, the sum of $2,000. Talbott filed his schedules February, 1902, and petitioned to have a homestead set apart to him out of the funds in the hands of the trus-

tee, which application was resisted because in fact the only funds in the hands of the trustee were the proceeds of the Lancaster judgment, which it was alleged had been recovered by the proceeding for the benefit of the creditors.

The following is the finding of fact made by the referee:

"I further find that on the 28th day of May, 1900, the said Ellis M. Talbott did make a transfer to L. S. Worsham, as trustee, to all of his interest in a judgment obtained in his favor against R. A. Lancaster, as receiver in the United States court for the Western division of the Southern district of Georgia, but that the proceeds of said judgment were never recovered by said Worsham, trustee, but that the same were in the hands of R. C. Jordan, one of the attorneys for said bankrupt, at the time the proceedings in bankruptcy were begun; that the said Worsham, trustee, never reduced any portion of the same to his possession; and that by order of the United States court the amount of said judgment was ordered to be paid to the trustee in bankruptcy of said Ellis M. Talbott, and the same was afterwards so paid by the said Jordan."

The judge of the bankruptcy court stated the facts as follows:

"Ellis M. Talbott had recovered by a proceeding in the circuit court a judgment against Lancaster, receiver, amounting to some thousands of dollars. Talbott became involved in his business. That was the business of a broker. He had a partnership with a Mr. Palmer. His firm failed, and to secure his creditors he assigned to a trustee the judgment which he had obtained in the case against Lancaster. The assignment was made in writing, and is as follows: 'For value received, I hereby transfer and assign to L. S. Worsham, trustee, all my interest in the judgment obtained in my favor in the case of Ellis M. Talbott v. R. L. Lancaster, receiver, in the United States circuit court for the Western division of the Southern district of Georgia.' This, it otherwise appears from the evidence, was an assignment for creditors. It is true, I believe, that it was assigned for the creditors of Talbott & Palmer, but Ellis M. Talbott was himself personally bound to pay those debts, and therefore it was, in contemplation of law, an assignment for his creditors. This assignment was made within four months anterior to the proceeding·in bankruptcy. It was clearly a preference, and upon the proper issue made by the bankrupt court it was held to be a preference. The money recovered by virtue of the judgment was paid over to the trustee in bankruptcy, and then, after some delay before the referee and in this court, Mr. Talbott files his application for exemption out of this fund."

In Pendleton v. Hooper, 87 Ga. 108, 13 S. E. 313, 27 Am. St. Rep. 227, the supreme court of Georgia held that, although title had been parted with, a homestead might still be claimed on the theory of possession; holding that no present interest or estate in land beyond that implied in the fact of possession is requisite to sustain a claim of exemption as against a debt or lien inferior to the exemption right.

In Whitehead v. Mundy, 91 Ga. 198, 17 S. E. 287, the above case was cited approvingly, and a homestead allowed in a crop of corn raised on another man's land, on· the theory of possession.

In McDowell v. McMurria, 107 Ga. 812, 33 S. E. 709, 73 Am. St. Rep. 155, a homestead was denied in a case where creditors had recovered property alleged to have been fraudulently conveyed. The court said:

"Under our statute, a homestead could, on the application of McMurria, only be set apart for the benefit of his family out of his own property. Civ. Code, § 2828. Inasmuch, however, as, prior to his application, the title by his own voluntary act had passed out of him, it follows that such homestead could not legally be granted. This is true whether the deed of conveyance was made with a good or a fraudulent intent. Cassell v. Williams, 12 Ill.

387; Sumner v. Sawtelle, 8 Minn. 309 (Gil. 272); Huey's Appeal, 29 Pa. 219. In Re Graham, 2 Biss. 449, Fed. Cas. No. 5,660, the court, ruling on this question, said: 'In attempting to place his property beyond the reach of his creditors, he has placed his exemptions beyond his own reach.' It follows, from what has been said, that the receiver should not have been restrained from the execution of the decree of the superior court of Calhoun county to sell the property, because of the application of McMurria for homestead."

In the present case the bankrupt has neither title nor possession, nor any meritorious claim, and, in my opinion, he is not entitled to a homestead out of the funds recovered by the creditors.

Talbott was put into bankruptcy because of the assignment of the Lancaster judgment. Up to the adjudication in bankruptcy there seems to be no pretense that under the law of Georgia he could have been assigned a homestead out of the proceeds of that judgment. In effect, the bankrupt's creditors sued for and recovered the proceeds of the judgment (for it was done by their trustee), and thereupon Talbott applies for and is allowed a homestead out of those proceeds. It would be interesting to know under what law Talbott gets his homestead. It is not supposed that the bankruptcy law allows any homestead to bankrupts except as otherwise entitled. The law of Georgia does not allow a debtor a homestead out of property that he has voluntarily sold and conveyed. An examination of the transcript shows that the pretense that Talbott's assignment to Worsham was incomplete is an afterthought, and without substantial basis in law or fact.

I think the learned judge of the court below and my brethren here have been too liberal with the property that should under the bankrupt law go to Talbott's creditors.