## In re CODDINGTON.

(District Court, M. D. Pennsylvania.   January 2, 1904.)

### No. 185.

1. BANKRUPT—EXEMPTIONS—CLAIM—PERISHABLE GOODS—SALE.
   Where a bankrupt claimed his exemption in his schedules, such claim must be regarded as seasonably made, notwithstanding the fact that the goods in the meantime have been converted into money by a receiver's sale as perishable.

2. SAME—PREFERENTIAL TRANSFER.
   Where, prior to the institution of bankruptcy proceedings, the bankrupt had voluntarily transferred certain goods belonging to him to a creditor as a preference, he is not entitled to obtain his exemption out of such goods after they had been recovered back by the trustee in bankruptcy.

In Bankruptcy. Certificate from C. A. Van Wormer, referee. See (D. C.) 118 Fed. 281.

L. P. Wedeman, for bankrupt.

Ralph B. Little, opposed.

ARCHBALD, District Judge. Having made claim to his exemption in his schedules, the bankrupt must be regarded as in time, notwithstanding the fact that his goods have meanwhile been converted into money by a receiver's sale as perishable, and he is now remitted in consequence to the proceeds. In re Le Vay, 125 Fed. 990. But the question is whether he is entitled to obtain his exemption out of goods which, prior to the institution of the proceedings, he had voluntarily transferred as a preference to another. If the transfer was not simply preferential, but covinous, with intent to hinder or defraud creditors, he would certainly be cut off, according to the interpretation put upon the state law in Pennsylvania, the right being uniformly denied where a fraud in fact has been perpetrated. Huey's Appeal, 29 Pa. 219; Imhoff's Appeal, 119 Pa. 350, 13 Atl. 279; Kreider's Estate, 135 Pa. 578, 79 Atl. 1073; In re Yost (D. C. Pa.) 9 Am. Bankr. Rep. 153, 117 Fed. 792. It is argued that such is the case here, but, although there may be some things that look that way, I am not prepared, on the whole, to so find. The question is therefore squarely raised whether the exemption can be claimed out of a preference that has been recovered back.

The decisions on the subject are conflicting. It is held that it cannot in In re Tollett (D. C. Tenn.) 5 Am. Bankr. Rep. 305, 105 Fed. 425; In re White (D. C. Mo.) 6 Am. Bankr. Rep. 451, 109 Fed. 635; In re Long (D. C. Pa.) 8 Am. Bankr. Rep. 591, 116 Fed. 113; and In re Evans (D. C. N. C.) 116 Fed. 909; and while the Tollett Case was reversed by the Court of Appeals of the Sixth Circuit (5 Am. Bankr. Rep. 404, 106 Fed. 866, 46 C. C. A. 11), it was only on the ground that the exemption there claimed was a homestead, which under the state law inured to the benefit of the wife as well as the husband, and was not lost by anything short of a fraudulent transfer. On the other hand, the right was sustained by the Court of Appeals of the Eighth Circuit, Sanborn, J., dissenting, in In re Falconer, 6 Am. Bankr. Rep. 557, 110 Fed. 111, 49 C. C. A. 50, and by the Court of Appeals of the Sixth Circuit, Pardee, J., dissenting, in Bashinski v. Talbott, 119 Fed. 337, 56 C. C. A. 241. The Falconer Case, however, arose in Arkansas, and is admittedly influenced by the law of that state, according to which it is held that a debtor may have his homestead exemption set apart to him even out of land which he has fraudulently conveyed, and which his creditors have succeeded in getting back (Carmack v. Lovett, 44 Ark. 180), a doctrine which would hardly be accepted in Pennsylvania. In view of this diversity of opinion, the question must be resolved here on principle as one of first impression. It is to be decided, in my judgment, not by the local law, which varies from state to state, but by reference to the provisions of the bankrupt act itself, from which the whole doctrine of preferences springs, and to which we must therefore resort to determine the result.

So far as the bankrupt himself is concerned, a preferential transfer is absolute, and cannot be recovered back. He parts with his money or property for the benefit of the creditor to whom it is turned over, who is entitled to retain it except as the transaction is made voidable by the bankrupt act at the instance of the trustee, or a surrender is required before participation can be had by the creditor in the rest of the estate. Manifestly, the provisions which lay ground for a recovery in either of these ways are not intended for the benefit of the bankrupt, but his general creditors, in order to secure an equal division among all. When, therefore, the trustee proceeds to reclaim, by suit or otherwise, the property which has been disposed of, he does it in the interest of creditors whom he represents, and not of the bankrupt, whom—except remotely and contingently—he does not, and whose act, in fact, he is seeking to undo. In view of this, it would produce a most peculiar and anomalous result if at this stage the bankrupt could step in and assert his exemption to that which had been re·· covered, and thus defeat the very object for which a right of recovery is given by the act. It is to be remembered, also, that property which the bankrupt is entitled to exempt forms no part of the estate passing to the trustee, nor does the trustee take title thereto. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061. Consistent with this the bankrupt must, therefore, be the owner of the property at the time he demands his exemption out of it, and cannot extend his claim over that to which he has no title except through the intervention and instrumentality of the trustee. It absolutely reverses the order of things if, after the trustee has successfully asserted title to the property in the hands of the preferred creditor, the bankrupt, whose rights in it were gone, can reassert them, divesting the title of the trustee, and reclaiming the property to himself. It may be that to shield a preference which he has given he can claim, as exempt in the hands of the creditor, the property which he has transferred to him, provided it does not exceed the amount of his exemption, just as he could turn it over to such creditor, or otherwise dispose of it after it had been set aside to him. In so doing he would treat the property as his own, though not such in reality, and, if he wished to use his exemption right in this way to protect one whom he had previously favored, there might be possibly no ground for complaint. But that is not this case. What he seeks to do here is to obtain the benefit of that which the creditor has surrendered (finding himself unable to retain it), to the detriment of that creditor as well as all others, the property given up being practically the whole of the estate. If this can be successfully done, a debtor who was given a preference, but repents of it, can go into bankruptcy and get it back, a result hardly to be contemplated.

It is said, however, that there is a distinction to be drawn between a preference which is only recovered at the end of litigation and with expense to the estate, and one which, as here, is voluntarily surrendered at the outstart, and thus passes into the hands of the trustee at once, along with the rest of the estate. But so far as the bankrupt is concerned a preference is a preference, under whatever circumstances it is given, or whatever be the outcome with regard to it. It may be so manifestly voidable that the creditor concludes to surrender it

without a contest, or so related to the rest of the estate as to make it desirable for him to do so, in order to come in with the other creditors. But whatever be the case, the bankrupt is not in a position to benefit by it. In giving the preference which he did, he parted with his rights to the property, and there is nothing to bring them into being again, whether the creditor voluntarily turns it over, or is compelled to do so against his will. In the present instance it was given up to the marshal, who went armed with an order of court to take it, which the creditor did not deem advisable to resist. But by whatever means secured in this or any other case, the important thing is that it is brought about by compulsion of the bankruptcy act, without which the transaction could not be disturbed, the purpose being to undo the act of the bankrupt for the benefit of his general creditors, from which, therefore, he can expect to derive no benefit himself.

The action of the referee in disallowing the exemption is affirmed.