GOLDBERG, Senior Circuit Judge:
 

 In this case, a creditor executed a judicial lien on the debtor’s property less than ninety days before the debtor’s petition for bankruptcy. Between the date of execution and the date of the petition, the debtor was married, thereby exempting the property under state law from the claims of every creditor except the lienor. We are asked to decide whether the execution of the lien constitutes a preference voidable by the debtor pursuant to sections 522(h) and 547 of the Federal Bankruptcy Code. We hold that it does, and affirm the judgment below.
 

 Facts and Procedural History
 

 Howard Levine and others guaranteed a debt of National Vehicle Leasing, Inc. to Deel Rent-A-Car, Inc. (“Deel”). Deel subsequently obtained a judgment against Levine in Florida state court. On January 9, 1980, Deel perfected the judgment and executed a lien against all real property owned by Levine in Broward County, Florida. At the time, Levine owned a condominium in Broward County, but was not married. On March 13, 1980, Levine was married and brought his wife into his residence in the Broward condominium.
 

 On March 31, 1980, within 90 days of Deel’s execution of the lien, Levine filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code (“Code”).
 
 *752
 
 The case was heard on June 10, 1980, in the United States Bankruptcy Court for the Southern District of Florida. Deel filed an amended adversary complaint, seeking,
 
 inter alia,
 
 to prevent Levine’s discharge. Levine counterclaimed, seeking to avoid the judgment lien as a preference, pursuant to sections 522(h) and 547(b) of the Code.
 
 [1]
 
 In an amended counterclaim, Levine also sought to avoid the lien as an impairment of his homestead exemption pursuant to section 522(f) of the Code.
 
 [2]
 

 The bankruptcy court ruled against Levine on the section 522(f) claim, holding that under Florida law
 
 [3]
 
 the property acquired homestead status when Levine was married, but that the homestead exemption was not effective against a judgment lien that had attached before that date.
 
 [4]
 

 Levine did prevail, however, on his section 547(b) claim.
 
 [5]
 
 The court avoided the lien, holding that all of the elements of a preference were present and that Levine had standing to bring an action under section 522(h) of the Code.
 
 [6]
 

 On appeal, the United States District Court for the Southern District of Florida affirmed the judgment of the bankruptcy court.
 
 [7]
 
 This appeal follows.
 

 Issues on Appeal
 

 Levine has not challenged the bankruptcy court’s interpretation of section 522(f). Therefore we need only consider whether the lien was a voidable preference under sections 522(h) and 547(b).
 
 [8]
 

 Section 522(h) provides:
 

 
 *753
 
 The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
 

 (1) such transfer is avoidable by the trustee under section . .. 547 ... of this title; and
 

 (2) the trustee does not attempt to avoid such transfer.
 

 Section 547(b) provides in pertinent part:
 

 ... the trustee may void any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made on or within 90 days before the date of the filing of the petition ...;
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.. ..
 

 Deel raises one issue concerning each provision. First, it argues that Levine has no standing to avoid the preference under section 522(h). Standing depends upon the debtor’s ability to exempt the property from all creditors’ claims; and under Florida law Levine’s homestead exemption does not apply to Deel’s lien
 
 [9]
 
 — Levine cannot exempt the property from Deel’s claim.
 

 Second, Deel argues that one element of a preference under section 547(b) does not exist in this case. Deel relies on a number of cases which applied a “diminution of estate” requirement to section 60 of the old Bankruptcy Act (“Act”),
 
 [10]
 
 the predecessor to section 547(b) of the current Code.
 
 [11]
 
 According to that gloss, a preferential transfer could be avoided only if it had diminished the estate available to other creditor claims —i.e. if the property could be used to pay off the claims of other creditors in the bankruptcy proceeding. In this case, Deel argues, avoiding the lien would benefit no other creditors, since the property would be exempt from their claims. Therefore, there has been no diminution of the estate, and the requirements for a preference are not met.
 

 We reject both of Deel’s contentions. First, a clear reading of section 522(h) requires only that Levine be able to exempt his property “if the trustee [has] avoided” Deel’s lien. Under that test, Levine’s property would be exempt. Second, we hold that the “diminution of estate” doctrine is not applicable in the case of a debtor bringing an action under section 522(h) to avoid a preference.
 

 Discussion
 

 I. Section 522(h) and Levine’s Standing
 

 A.
 
 When Must a Homestead be Exempt?
 

 Deel argues that Levine has no standing. Levine’s condominium would not be exempt
 
 *754
 
 under Florida law from Deel’s pre-marriage lien. Therefore, Deel claims that Levine could not “have exempted such property under subsection (g)(1),” and he does not have standing under subsection (h). Appellant’s Reply Brief at 2, quoting section 522(h).
 

 We accept Deel’s characterization of Florida law, but we disagree with his conclusions about the Bankruptcy Code. Subsection 522(h), by its terms, gives Levine standing. .The subsection provides:
 

 The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section
 
 if the trustee had avoided such
 
 transfer... .
 

 11 U.S.C. § 522(h) (1982) (emphasis added). Reading that literally, Levine would have been able to exempt the property. If the trustee had avoided the transfer, Deel would have had no judgment lien and, therefore, no ground for claiming that the homestead exemption was not effective against its claim.
 

 Moreover, subsection (h) directs us to examine the debtor’s power to exempt the property under subsection (g), assuming that the trustee had avoided the lien. Subsection (g) provides:
 

 ... the debtor may exempt under subsection (b) of this section property that the trustee recovers ..., to the extent that the debtor could have exempted such property under subsection (b) of this section
 
 if such property had not been transferred,
 
 if—
 

 (1)(A) such transfer was not a voluntary transfer of property by the debtor; and
 

 (B) the debtor did not conceal such property....
 

 11 U.S.C. § 522(g) (1982) (emphasis added).
 

 Again, if the property had not been transferred (i.e. if no lien had been executed), then the condominium would be exempt under subsection (b), which merely provides for the application of various exemptions (including state law exemptions).
 
 [12]
 
 Deel does not claim that the transfer was voluntary on the part of Levine or that Levine concealed the property.
 

 Therefore, we hold that a straightforward reading of section 522 supports the lower court’s conclusion that Levine has standing to avoid Deel’s lien. Levine could have exempted his condo “if the trustee had avoided the lien” and “if such property had not been transferred.” Since he could have exercised that exemption, he can stand in the trustee’s shoes to avoid the lien himself.
 

 B.
 
 Conflicting Policies
 

 We note that the debtor’s power to avoid transfers may, in cases like this one, have the effect of giving the debtor a broader exemption than state law would provide. However, we feel that our holding is mandated by the clear language of the statute.
 

 Moreover, in the context of avoiding a preferential transfer, our holding serves a central policy of the preference statute: preventing a race to the courthouse by creditors during the last three months before the debtor files a bankruptcy petition.
 
 [13]
 
 The House Report to the Bankruptcy Code states:
 

 [B]y permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The pro
 
 *755
 
 tection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors.
 
 [14]
 

 As the Report indicates, section 547 of the Code would normally prevent a race to the courthouse by giving the trustee the power to avoid any judicial lien (however valid under state law) during the preference period. In the circumstances of this case, however, the transfer would stand up if we held for Deel and prevented the debt- or from recovering the property. Thus, there would again be an incentive for a creditor to receive a preference period transfer. With any luck, he would be able to keep the asset, to the exclusion of the debtor and other creditors. Moreover, he would benefit even if other creditors established liens later than his but before the debtor converted assets into exempt property. At best, the first lien would be considered prior to the others. At worst, it would be considered a preference relative to the others, and the lien creditors (or perhaps all of the creditors) would share the asset. In either event, the execution of the lien would prevent the debtor from converting his asset into exempt property.
 

 In future cases, the astute creditor, anticipating a debtor’s bankruptcy, would attempt to establish a lien on every non-exempt asset — ensuring at least that the assets would be preserved for the creditors. Such a strategy would produce a race to the courthouse (or the altar) between creditors and the debtor during the preference period. This result would be antithetical to the policies of sections 522 and 547.
 

 II. Diminution of Estate Doctrine
 

 In addition to the requirement that the debtor be able to exempt his transferred property, section 522(h) requires in pertinent part that
 

 (1) such transfer be avoidable by the trustee under section ... 547 ... of this title ....
 

 Deel’s second argument on appeal is that the trustee could not have avoided the lien under section 547 because of the diminution of estate doctrine. The doctrine prevents a trustee from avoiding a preferential transfer when he cannot bring the asset back into the estate to benefit creditors other than the transferee.
 
 See Continental and Commercial Trust and Savings Bank v. Chicago Title and Trust,
 
 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1913); 4
 
 Collier on Bankruptcy
 
 § 547.21 at 547-79 (1983). In this case, Deel claims that no other creditor would benefit from the avoidance of the lien and, therefore, neither a trustee nor Levine can take advantage of section 547. Deel takes particular note of the language in one old case holding that the preference avoidance provisions were not meant for the benefit of the debtor.
 
 See In re Coddington,
 
 126 F. 891, 893 (E.D.Wis.1903). We conclude, however, that the availability of assets to satisfy other creditors’ claims is not relevant when a debtor avoids a preference pursuant to sections 522(h) and 547 of the new Code. In reaching this result, we consider the purposes of the diminution of estate doctrine and the differences in policy between the old Act and the new Code.
 

 A.
 
 Origins of the Doctrine
 

 Neither the Code nor the old Act contains an explicit diminution of estate requirement. However, in cases decided under the Act, courts held that the trustee could not avoid preference period transfers that did not diminish the estate available to other creditors. To avoid such transfers did not serve the purposes of the bankruptcy law.
 

 For example, in
 
 Continental and Commercial Trust and Savings Bank v. Chicago Title and Trust, supra,
 
 the debtor, a member of the Chicago Board of Trade, held certain margin certificates representing his right to security deposits that he had made with other traders. During the preference period, he gave up the certificates as part of an arrangement to pay off various debts. The trustee attempted to avoid the transfer
 
 *756
 
 as a preference, but the Supreme Court held that the requirements of section 60 were not met:
 

 What was done did not in fact diminish the estate of Prince, otherwise available to the creditors in the bankruptcy administration, for the traders holding them would have had the benefit of the deposits under the terms of the certificates and the rules of the Board of Trade. It therefore appears that the essential element of a preferential transfer within the meaning of the bankruptcy act — diminution of the bankrupt estate — is wanting. The fact that what was done worked to the benefit of the creditor, and in a sense gave him a preference, is not enough, unless the estate of the bankrupt was thereby diminished.
 

 229 U.S. at 443-44, 33 S.Ct. at 831.
 

 In
 
 Walker v. Wilkinson,
 
 296 F. 850 (5th Cir.1924), the Fifth Circuit stated the essential policy behind the doctrine:
 

 The purpose of the law of preferences is to secure an equal distribution of the bankrupt’s assets among his creditors of like class. If a transaction, in its entirety, does not interfere with this purpose of the law, it does not constitute a voidable preference. The fact that one creditor is paid in full from a source to which other creditors have no right to resort, does not entitle other creditors to complain or the trustee to recover the amount so secured.
 

 Id.
 
 at 852.
 

 The doctrine has been applied where the transfer to a creditor is accompanied by an equal and contemporaneous benefit to the estate,
 
 see, e.g., Bachner v. Robinson,
 
 107 F.2d 513, 514 (2d Cir.1939) (net benefit to debtor’s estate where debtor was lessee, and lessor’s consent to assignment of lease was obtained by lessee’s payment of overdue rent); or where the preferential transfer is made by a third party,
 
 see Creditors of D’Angio v. D'Angio,
 
 554 F.2d 863, 864 (8th Cir.1977) (no diminution of debtor’s estate because check drawn on the account of an outsider).
 

 Generally, though, the courts have applied the doctrine in cases in which one creditor receives an asset that, for some reason, is protected from the claims of other creditors.
 
 See, e.g., Continental and Commercial Trust and Savings, supra,
 
 (creditors of estate having no claim on margin certificates);
 
 Azar v. Morgan,
 
 301 F.2d 78 (5th Cir.1962) (payment to a secured creditor not diminishing the assets available to general creditors).
 

 It is important to keep in mind, however, that most of the diminution of estate cases involved actions by a creditor or a trustee acting on behalf of the creditors. Under those circumstances, it is appropriate to ask whether the transferred assets could actually be returned to creditors. It makes no sense to let the trustee recover if the creditors will not benefit. When the
 
 debtor
 
 himself is the plaintiff, it is less appropriate to inquire whether or not
 
 creditors
 
 will benefit. Deel argues that the preference provisions are not meant for the benefit of the debtor
 
 [15]
 
 and that the focus should still be on the availability of the assets to meet creditor claims. However, a brief analysis of the historical differences between the Act and the Code convinces us that this argument is wrong.
 

 B.
 
 The Debtor under the Act: A Juridical Weakling
 

 The preference provisions of the Act were designed primarily to protect creditors. The drafters were concerned that a debtor would favor one creditor over the others; and, therefore, the trustee was empowered to recover preferential transfers made during the four months preceding bankruptcy. Bankruptcy Act § 60.
 
 [16]
 

 The Act did not give the same power to a debtor who wished to recover exempt assets.
 
 See
 
 3
 
 Collier on Bankruptcy
 
 ¶ 522.30 at 522-87 (15th ed. 1983). The debtor was not authorized to avoid a preferential transfer; and, even if the trustee avoided such a transfer, the debtor could not take advan
 
 *757
 
 tage of his exemptions. Bankruptcy Act § 6;
 
 [17]
 
 3
 
 Collier on Bankruptcy
 
 ¶ 522.30 at 522-87.
 

 Thus, the District Court in
 
 In re Coddington
 
 stated:
 

 So far as the bankrupt himself is concerned, a preferential transfer is absolute, and cannot be recovered back.... Manifestly, the provisions which lay ground for a recovery ... are not intended for the benefit of the bankrupt, but his general creditors, in order to secure an equal division among all.
 

 126 F. at 893.
 

 C.
 
 The Debtor under the Code: New-found Strength
 

 The Code of 1978 reflects a new policy of protection for the debtor in a bankruptcy proceeding. In order to ensure the availability of exemptions and provide the debtor with the assets necessary for a “fresh start” after bankruptcy, the drafters of the Code created a number of new substantive and procedural protections. See Comment,
 
 Protection of a Debtor’s “Fresh Start” under the New Bankruptcy Code,
 
 29
 
 Catholic L.Rev.
 
 843 (1980). The Code provides new Federal exemptions to augment state laws, 11 U.S.C. § 522(d) (1982),
 
 [18]
 
 and gives debtors a number of new procedural powers to protect their exemptions, including the power to avoid liens that impair exemptions,
 
 id.
 
 § 522(f), and the power to avoid preferential transfers,
 
 id.
 
 § 522(h).
 

 Subsection 522(h) is an integral cog in the new fresh start mechanism embodied in the Code. The debtor is relieved from relying on a trustee who might have little incentive to recover assets which could not go to the creditors.
 
 Cf.
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess., 362; S.Rep. No. 989, 95th Cong., 2d Sess., 76-77;
 
 reprinted at
 
 1978 U.S.Code Cong. & Ad.News 5862-63, 6318;
 
 Comment, supra
 
 at 861. Most important, the debtor is given the avoidance powers solely to protect his own exemptions,
 
 cf.
 
 H.R.Rep. No. 595,
 
 supra;
 
 S.Rep. No. 989,
 
 supra.
 

 Thus, the words of the District Court in
 
 In re Coddington, supra,
 
 are no longer true. The preference avoidance provisions are clearly intended for the benefit of the debtor to the extent that he comes within the requirements of section 522(h). An action by the debtor should be tested according to whether the assets would come to him, not whether they would go to the creditors.
 

 Application of the diminution of estate test in this context would in fact contradict the explicit language of section 522(h). The provision, as discussed above, requires that the debtor be able to exempt the property recovered. Of course, any time he can do that, the property is by definition unavailable to satisfy the claims of other creditors. The diminution of estate doctrine must automatically fail. In effect, application of the doctrine would nullify section 522(h). Because we wish to give effect to the explicit words of Congress and further the fresh start policy of the Code, we hold that the diminution of estate doctrine
 
 [19]
 
 is not applicable when a debtor sues to avoid a preference under section 522(h).
 

 
 *758
 
 Given this limited holding, we need not decide Levine’s broader claim that the doctrine has been annulled with respect to
 
 all
 
 actions by the trustee as well as the debt- or.
 
 [20]
 

 A Final Recapitulation
 

 Our decision in this case reflects not only the clear language and history but also the main protective thrust of the Bankruptcy Code. The preference avoidance provisions are designed not to punish the debtor but to defend him from the ravenous maw of creditors during the preference period. Thus, while the literal language of section 522(g) and (h) gives Levine standing to avoid Deel’s lien, Levine’s action is also supported by the policy against a preference-period race to the courthouse.
 

 Similarly, the policy of protecting a debt- or’s exemptions informs our interpretation of the diminution of estate doctrine. The availability of assets to the creditors cannot be relevant to an action by the debtor to avoid a preference pursuant to sections 522(h) and 547. Section 522(h) is designed to protect the debtor alone.
 

 We do not decide, however, whether the diminution of estate doctrine still applies to actions brought by the trustee. Any further limitations on the doctrine will be developed in future cases.
 

 AFFIRMED.
 

 [1]
 

 . 11 U.S.C. §§ 522(h) and 547(b) (1982).
 

 [2]
 

 . 11 U.S.C. § 522(f) (1982).
 

 Section 522 provides a number of mechanisms by which the insolvent debtor can sue to recover or protect assets that should be exempt from creditor claims.
 

 Pursuant to section 522(f), he can sue to avoid certain liens that impair his exemptions. The liens include (1) judicial liens and (2) non-possessory, nonpurchase-money security interests in certain types of property. 11 U.S.C. § 522(f) (1982).
 

 Second, if the trustee in bankruptcy uses his own avoiding powers to bring assets back into the bankrupt estate, the debtor can act to exempt such assets. 11 U.S.C. § 522(g) (1982). The debtor is permitted to do so if (1) he had neither voluntarily transferred the assets out of the estate nor concealed them, or (2) he could have avoided the “transfer” of a nonpurchase-money security interest under section 522(f)(2),
 
 supra.
 

 Finally, if the trustee could have avoided a transfer of property but did not, and if the debtor could have exempted the property had the transfer been avoided, then the debtor is permitted to step into the trustee’s shoes and avoid the transfer himself. 11 U.S.C. § 522(h) (1982). This final power is involved in the case at bar.
 

 [3]
 

 . Levine must claim his exemptions under Florida law, since Florida has specified that federal exemptions will not apply to Florida debtors.
 
 See
 
 3
 
 Collier on Bankruptcy
 
 ¶ 522.08 at 522-44 n. 8a. Section 522(b)(1) of the Bankruptcy Code gives states the power to opt out of federal exemptions. 11 U.S.C. section 522(b)(1) (1982).
 

 [4]
 

 .
 
 Levine v. Deel Rent-A-Car,
 
 6 B.R. 54 at 58, No. 80-00361, slip op. at 5 (Bkrtcy.S.D.Fla.1980),
 
 citing First National Bank v. Peel,
 
 107 Fla. 413, 145 So. 177 (1932).
 

 [5]
 

 .
 
 Levine v. Deel Rent-A-Car, supra
 
 note 4, at 58;
 
 Levine v. Deel Rent-A-Car,
 
 No. 80-00361 (Bankr.S.D.Fla., Sept. 18, 1980) (order on plaintiffs motion to clarify and amend final judgment).
 

 [6]
 

 . 11 U.S.C. § 522(h) (1982).
 

 [7]
 

 .
 
 Deel Rent-A-Car v. Levine,
 
 16 B.R. 873 at 875 (S.D.Fla.1982).
 

 [8]
 

 . Without deciding the issue, we note in passing that Levine might have been successful on his section 522(f) claim. The language of the provision is somewhat ambiguous; it is not clear whether Deel’s judicial lien “impairs an exemption to which [Levine] would have been entitled.”
 

 Deel would argue that the lien does not “impair” an exemption, since under Florida law the homestead exemption was not effective against Deel. The Bankruptcy Court took this position.
 
 See Levine v. Deel Rent-A-Car, supra
 
 note 3.
 

 However, the legislative history to section 522(f) suggests that even under these circumstances Deel’s judicial lien impairs Levine’s exemption:
 

 Subsection (f) protects the debtor’s exemptions, his discharge, and then his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.
 

 [[Image here]]
 

 H.Rep.No. 595, 95th Cong., 1st Sess. 362; S.Rep. No. 989, 95th Cong., 2d Sess. 76;
 
 re
 
 
 *753
 

 printed at
 
 1978 U.S.Code Cong. & Ad. News 5787, 5862, 6318. In the absence of Deel’s lien, Levine could have exempted his homestead against the claims of every creditor.
 

 [9]
 

 . The parties do not dispute the bankruptcy court’s interpretation of Florida law.
 

 [10]
 

 . Throughout this opinion, we distinguish between the old statute and the new statute by referring to the former as the “Act” and the latter as the “Code.”
 

 [11]
 

 . Deel agrees that the literal statutory elements of a preference exist. A judicial lien is a “transfer.” See 4
 
 Collier on Bankruptcy
 
 § 547.10 at 547.38 (15th Ed.1983). The transfer was made to a creditor, Deel, for an antecedent debt. Levine was insolvent at the time, and the transfer was made within 90 days before Levine filed his petition for bankruptcy.
 
 See
 
 11 U.S.C. § 547(b)(1)-(4) (1982). Deel even admits that the literal language of the final requirement, section 547(b)(5), is met in this case. The judicial lien has given Deel more than it would receive if it had no lien and received its share of Levine’s assets in a liquidation proceeding.
 
 See
 
 11 U.S.C. § 547(b)(5) (1982). Deel claims, however, that in addition to the literal requirements of that provision, courts must read in the diminution of estate requirement.
 

 [12]
 

 . § 522(b) provides in pertinent part:
 

 ... an individual debtor may exempt from property of the estate ... (2)(A) any property that is exempt under ... state ... law
 

 [[Image here]]
 

 11 U.S.C. § 522(b) (1982).
 

 [13]
 

 . Our holding does not affect the other central purpose of the preference provisions: ensuring equal distribution of assets among the creditors.
 
 See
 
 H.R.Rep. No. 595, 95th Cong. 1st Sess. 177-78,
 
 reprinted at
 
 1978 U.S.Code Cong. & Ad. News 6138. We benefit no creditor at the expense of the others when we return the homestead to Levine.
 

 [14]
 

 . H.R.Rep. No. 595, 95th Cong., 1st Sess., 177,
 
 reprinted at
 
 1978 U.S.Code Cong. & Ad. News 6138.
 

 [15]
 

 .
 
 See In re Coddington, supra
 
 at 893.
 

 [16]
 

 . 11 U.S.C. § 96 (1976).
 

 [17]
 

 . 11 U.S.C. § 24 (1976). The statute provided in pertinent part:
 

 [N]o such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this Act for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess.
 

 [18]
 

 . The Code does give a state the authority to expressly opt out of the Federal exemptions, however. 11 U.S.C. § 522(b)(1) (1982).
 

 [19]
 

 .In using the phrase “diminution of estate doctrine,” we mean the consideration of whether the transferred assets would be available to meet
 
 creditor
 
 claims. There might be an analog to the diminution of estate doctrine in a section 522(h) action if the transfer had not impaired the value of the assets available to meet the debtor’s claim — for example, if the transfer of exempt assets had been accompanied by an equal and contemporaneous increase in the assets which the debtor could claim from the estate. However, we need not face that problem in this case.
 

 [20]
 

 .
 
 See
 
 Appellee’s Brief at 10-11. Levine argues that the doctrine has been annulled by a change in the wording of § 547(b)(5). Section 60 of .'he former Act defined a preference
 
 inter alia
 
 as a transfer
 

 To or for the benefit of a creditor ... the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class
 

 11 U.S.C. § 60(a)(1) (1976).
 

 That language has been altered slightly in § 547(b), which refers to a transfer
 

 (1) to or for the benefit of a creditor; ... (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under Chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) the creditor received payment of such debt to the extent provided by the provisions of this title.
 

 11 U.S.C. § 547(b).
 

 Levine argues that the new wording reflects a change in focus from the creditor class to the individual creditor. Since the focus is on the individual, the diminution of estate doctrine is inappropriate.
 

 While we do not decide this issue, we do note that there is a good argument that the focus in section 547(b) is still on the “amount that will be received by members of the
 
 class
 
 of which the preferee is a member.” H.R.Rep. No. 595, 95th Cong., 1st Sess., 372; S.Rep. No. 989, 95th Cong., 2d Sess., 87;
 
 reprinted at
 
 1978 U.S.Code Cong. & Ad. News 5873, 6328 (emphasis added). Moreover, we note that any change in the provision may well be a response to a technical problem in the wording of old section 60.
 
 See
 
 3
 
 Collier on Bankruptcy
 
 ¶ 60.34 at 902 (14th Ed.1977);
 
 see also
 
 Macey,
 
 Preferences and Fraudulent Transfers under the Bankruptcy Reform Act,
 
 28
 
 Emory L.J.
 
 685, 689-90 (1979); H.R.Rep. No. 595,
 
 supra
 
 at 372; S.Rep. No. 989;
 
 supra
 
 at 87,
 
 reprinted at
 
 1978 U.S.Code Cong. & Ad. News 5873, 6328.
 

 If future courts determine that the diminution of estate doctrine still has some vitality in actions brought by the trustee, the particular application of the doctrine may turn on the purpose of the trustee’s exercise of the preference avoidance power. For example, if he is trying to retrieve assets that would be exempt and therefore available to the debtor, the doctrine should not be applicable. Section 522(g) suggests that the Code permits such actions by the trustee in order to protect the debtor’s exemptions.
 

 With regard to other assets that the trustee would be recovering for the benefit of creditors, however, the doctrine might be an appropriate test of his powers.
 
 See 4 Collier on Bankruptcy
 
 § 547.21.