**In the Matter of Joseph M. WEIS, Debtor.**

**Michael E. KEPLER, Trustee, Plaintiff,**

**v.**

**Ruth M. WEIS, Defendant.**

**Adv. No. 88–0114–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 26, 1988.

Michael Kepler, Madison, Wis., trustee.

Michael E. Grubb, Brennan, Steil, Basting & MacDougall, S.C., Janesville, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

On April 16, 1985, Joseph M. Weis filed a chapter 11 petition. Mr. Weis operated his business as debtor in possession ("D.I.P.") from that date until April 12, 1988, when he voluntarily converted the case to chapter 7. Thereafter, Michael Kepler served as trustee. Prior to conversion, the D.I.P. sought to recover certain preferential transfers. On February 26, 1986, the bankruptcy court dismissed all those claims.

Postconversion, on June 24, 1988, the chapter 7 trustee commenced this adversary proceeding against the debtor's wife to recover as either a preference or as a fraudulent conveyence the value of the prepetition transfer of the debtor's interest in his homestead. The defendant has raised, as an affirmative defense, the preclusive effect of the court's factual determinations made in the prior proceeding. The defendant also has asserted that the transfers in question did not result in any diminution of the bankruptcy estate and that, therefore, the trustee has no power under sections 547(b) and 548(a)(2) to avoid the transfers. She also asserts that, as a matter of law, the trustee cannot prove the requisite fraudulent intent under section 548(a)(1).[1] On the basis of these affirmative defenses, the defendant has moved for summary judgment on each of the trustee's claims. After a hearing on August 23, 1988, the motion was taken under advisement.

On June 12, 1985, Joseph M. Weis, as D.I.P., commenced an adversary proceeding against the Production Credit Association of Southeast Wisconsin and the Green Rock Farm Supply Cooperative to recover a number of prepetition transfers as preferences. The following findings as to the solvency of the debtor were made at the close of trial on January 16, 1986:

[P]utting all the figures together, I find that the assets shown exhibit 24 with the adjustments I have suggested, exceed in value the liabilities demonstrated on exhibit 26 as adjusted.

---

1. The trustee's "Statement of Theory of Each Cause of Action" states that his second and third causes of action allege voidable transfers "pursuant to section 548(a)(2)(A) and section 548(a)(2)(B)(i)." The trustee's subsequent reference to "actual intent," however, indicates that the trustee attacks the April 16, 1985, transfer under section 548(a)(1), as well as section 548(a)(2). The trustee's reference to section 548(a)(2)(B)(i) apparently is meant to indicate that of the three alternatives constituting the second element of a fraudulent transfer under section 548(a)(2), the trustee intends to establish the insolvency of the debtor on the date of the transfer.

On the basis of those adjustments, then I must find that the debtor was solvent on January 16, 1985.

Looking then at other dates including February 18 and April 10, 1985, the only substantial change that I am aware of would be that the steers were at some point sold and the proceeds paid over. That I understand to have been an offsetting transaction, reducing the debts by as much of the value of the steers and not affecting the balance.

I do not have any evidence on which to find that the increase of the indebtedness to Ruth Weis, which is reported on the sheets, in fact took place.

I find that at each of those dates the debtor was solvent.

Based in part on those findings, each of the D.I.P.'s claims was dismissed with prejudice. The D.I.P.'s motion for a rehearing on various issues raised in the adversary proceeding, including the solvency of the debtor on the dates the transfers occurred was denied.[2] Some two months after this case was voluntarily converted to chapter 7 the trustee brought this adversary proceeding against the debtor's wife to avoid a mortgage on the debtor's homestead. The mortgage from the debtor was executed on April 16, 1985, and was recorded with the Rock County Register of Deeds prior to the debtor's filing bankruptcy, which also occurred on April 16, 1985.

The only salient fact in dispute concerns the precise scope of factual issues resolved by the bankruptcy court in the first adversary proceeding. The defendant claims that the bankruptcy court determined that the debtor was solvent throughout the preference period applicable to that proceeding. The trustee contends that the bankruptcy court limited itself to determining that the debtor was solvent up to the date of the last transfer the D.I.P. was attacking, *i.e.* April 10, 1985. A transcript of the court's findings has been produced and the portion hereinafter quoted resolves the parties' disagreement over this issue.

## I. Preclusive Effect of Prior Findings.

The defendant raises collateral estoppel[3] as a defense[4] to the trustee's power. [citation omitted] It is not, therefore, an immutable rule, but rather a way to foreclose continued appeals for reconsideration of prior rulings of law. In this respect, the law of the case doctrine must be distinguished from *res judicata:* '[O]ne directs discretion; the other supersedes it and compels judgment.' *Southern Railway Co. v. Clift,* 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922). [citation omitted] *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir.1982).

The law of the case doctrine is therefore applied in a vertical, *i.e.* at various stages of the same proceeding, rather a horizontal, *i.e.* between different proceedings, manner. As the *Gertz* court stated:

There are two distinct situations where the law of the case doctrine is applicable. First, a court ordinarily will not reconsider its own decision made at an earlier stage of the trial or on a prior appeal, absent clear and convincing reasons to reexamine the prior ruling. [citation omitted] Second, an inferior court must apply the decision of a superior appellate tribunal on remand. [citation omitted].

*Gertz, supra,* 680 F.2d at 532.

Although there may be some confusion due to the use of the term "case" to refer to all matters related to a single debtor under the Bankruptcy Code, decisions involving the law of the case doctrine demonstrate that its applicability is

---

2. In his motion for rehearing the D.I.P. claimed that the court, after excluding debtor's claimed indebtedness to Ruth Weis, had improperly included $20,000.00 of equity in the debtor's homestead as an asset, and had erroneously reduced the debtor's claimed indebtedness to two creditors by approximately $10,000.00.

3. Collateral estoppel is distinguished from the related preclusion doctrine of "law of the case" in that the former is applicable to issues raised in two *different* proceedings, *see In re Busick,* 65 B.R. 630, 633 (N.D.Ind.1986) ("While the earlier proceeding may involve identical issues, a fundamental aspect of collateral estoppel is that it be a different proceeding from the one in which the issue is raised."), whereas the latter is applicable to issues raised in various stages of the *same* proceeding, *see id.* ("This doctrine covers a variety of situations in the context of a single case."). Additionally, the doctrines are distinguished by the degree to which they limit the court's power:

The law of the case doctrine 'is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter.' *Barrett v. Baylor,* 457 F.2d 119, 123 (7th Cir.1972) (citing *United States v. United States Smelting, Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950)). The doctrine is a self-imposed prudential limitation rather than a recognition of a limitation of the court's

claims. For collateral estoppel to apply, four elements must be established: first, the issue sought to be precluded must be the same as that involved in the prior action; second, the issue must have been actually litigated; third, the determination of the issue must have been essential to the final judgment; finally, the party against whom estoppel is invoked must have been fully represented in the prior action. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). Although extensively argued by the trustee, we need not reach the final three elements to determine this motion. The defendant fails on the first.

In the prior adversary proceeding I found that the debtor was solvent on each of the three dates on which the transfers in question were made. I stated from the bench that "I find that at each of those dates the debtor was solvent." The last of the transfers was made on April 10, 1985. There is no language in the record indicating that a determination of the debtor's financial condition after April 10, 1985, was made. The precise factual issue in this case, litigation over which the defendant argues is precluded by the prior adversary proceeding, is whether the debtor was solvent on April 16, 1985—the date the debtor granted and recorded a mortgage on his homestead to his wife.[5]

The question of the debtor's solvency on April 10, 1986, can hardly be said to be identical to the question of his solvency on April 16, 1986. Solvency, depending as it does on the debtor's relative assets and liabilities, is subject to daily if not hourly variation. In this case it is conceded by the debtor that a significant transfer of his assets occurred on April 16, 1985. Whether this or other financial transactions may have affected the debtor's balance sheet after April 10, 1985, remains an open question. For purposes of collateral estoppel, the question of whether the debtor was solvent on one date is not "identical" to the question of whether the debtor was solvent on a later date. *In re Sanderfoot,* 83 B.R. 564 (Bankr.E.D.Wis.1988); *In re Mason,* 69 B.R. 876 (Bankr.E.D.Pa.1987). *See also South Delta Water Agency v. U.S. Department of Interior,* 767 F.2d 531 (9th Cir.1985). *Cf. In re Vacuum Cleaner Corp. of America,* 33 B.R. 701 (Bankr.E.D. Pa.1983).

■ Although a principal dispositive issue in this adversary proceeding—the insolvency of the debtor on the date of the transfer—is not precluded, a question remains as to whether a subissue in this case—the insolvency of the debtor on April 10, 1985, and before—is precluded. The trustee seeks to relitigate the court's previous findings as to solvency on April 10,

limited to relitigation of issues already decided at an earlier stage of the same proceeding. *See In re Progressive Farmers Ass'n,* 829 F.2d 651, 655–56 (8th Cir.1987) (district court's instructions on remand to bankruptcy court found not to have established "the law of the case" on question of contract recission); *South Central Livestock v. Security State Bank,* 614 F.2d 1056, 1059 (5th Cir.1980) (appellate court's ruling that bank had knowledge of debtor's improper deposit of third parties' funds found to have established the "law of the case" on issue of bank's knowledge on remand to bankruptcy court for consideration of dischargeability of debt).

4. The defendant seeks to make use of "defensive" collateral estoppel, *i.e.* "where the prior judgment is invoked by a defendant against a plaintiff bringing suit on an issue he litigated previously as a plaintiff and lost against another defendant." *In re Stephan Smith Home for the Aged, Inc.,* 80 B.R. 678, 681 (E.D.Pa.1987). Assuming the chapter 7 trustee and the chapter 11 debtor in possession are in "privity" and thus

the same "party" for purposes of collateral estoppel, the fact that the defendant was not a party to the prior action is not a bar to invoking the doctrine. *See id.*

5. April 16, 1985, is the crucial date in this adversary proceeding, at least as to the issue of the debtor's insolvency. The trustee must establish the debtor's insolvency on the date the transfer which he seeks to avoid was made to establish the claims he asserts under section 547(b) and section 548(a)(2). 11 U.S.C. § 547(b)(3), § 548(a)(2)(B)(i). For purposes of section 547(b), the transfer was "made" on April 16, 1985, by the recording of the mortgage, which constituted "perfection" of the transfer within the meaning of section 547(e)(1). *See* 11 U.S.C. § 547(e)(2)(A) ("a transfer is made ... at the time such transfer takes effect between the transfer and the transferee, if such transfer is perfected at ... such time"). April 16, 1985, was also the date on which the transfer was made for purposes of section 548(a)(2). *See* 11 U.S.C. § 548(d)(1).

1985, and dates prior for the obvious reason that those findings may impair the trustee's ability to prove insolvency on April 16, 1985. The trustee argues that identicality of issues is lacking because the prior finding was made in the context of a chapter 11 case; as a result, any equity the debtor had in his homestead, because the debtor had not claimed it as exempt, was treated as an asset in the insolvency analysis. In this chapter 7, the equity has been claimed to be exempt and therefore should not be included in the insolvency analysis. *See* 11 U.S.C. § 101(31)(A)(ii).[6]

The trustee's argument appears sound. The insolvency calculation made in the previous case did not exclude potentially exempt assets because the debtor had made no exemption claims. Now that the exemption claim has been made, the question of solvency on April 10, 1985, is markedly different.

If the analysis were to the second and third elements of the collateral estoppel test, it is clear that the issue of the debtor's solvency as of April 16, 1988, was neither raised nor necessary for the court's final judgment in the first adversary proceeding. It is also apparent that the parties did not raise or litigate this issue. Even if I had ruled on the debtor's solvency after April 10, 1985, that finding would not have been essential to the final judgment that the transfers on April 10 and before were not preferential. Therefore, any determination that the debtor was solvent or insolvent after April 10, 1985, was irrelevant to a ruling that the preferential transfer claim was not established. *See* 4 *Collier on Bankruptcy* ¶ 547.06, p. 547–35 n. 1 (15th ed. 1988) ("It is clear from the terms of section 547(b) that the determination of insolvency must be directed to the time when the alleged preferential transfer was made."); *see also In re Fabric Buys of Jericho, Inc.*, 22 B.R. 1013, 1015 (Bankr.S. D.N.Y.1982) (where sales to debtor had occurred outside the preference period but receipt by debtor of payment from transferee had occurred inside the preference period, court stated "[t]he insolvency or solvency of the debtor at the time of the sales has no relevence in this proceeding. It is the insolvency at the date of the transfer which is crucial in determining a preference.").

## II. Avoidance of Transfers Involving Previously Exempt Property.

■ The defendant claims that because the transfer involved property that was, previous to its transfer, exemptible under section 522(b), the trustee lacks power to avoid the transfer for the benefit of the estate. The debtor's homestead has a value of $58,000.00. It is encumbered by a valid first lien in an amount of approximately $37,000.00. The mortgage given to the debtor-spouse on April 16, 1985, was in the amount of $21,000.00. Thus, if the debtor had not granted this mortgage to his spouse, he could have exempted $21,-000.00 in value as a homestead exemption under WIS.STAT. § 815.20. The trustee argues that while the property may have been exemptible prior to its transfer, the debtor's volitional encumberance of his remaining equity in the homestead is no impediment to the avoidance powers under either section 547 or 548. Because the transfer of the debtor's interest in his homestead was voluntary, if the trustee is successful in his avoidance action the debtor will not be able to exempt the property brought into the bankruptcy estate. *See* 11 U.S.C. § 522(g)(1)(A). Thus the trustee asserts that while the transfer itself may not have diminished the bankruptcy estate, its avoidance will result in the augmentation of the bankruptcy estate.

Resolution of this issue is made clear by the interplay of sections 551 and 522(g) of the Bankruptcy Code. Section 551 provides that:

> any transfer avoided under section ... 547, 548 ..., is preserved for the benefit of the estate but only with respect to property of the estate.

It is well settled that exempt property is property of the estate until the debtor asserts his right to the exemption. Therefore, a transfer of otherwise exempt prop-

---

6. The debtor has claimed a homestead exemption of $21,227.98.

erty, which has been avoided under either section 547 or 548, is brought into the bankruptcy estate by section 551. Section 522(g) provides the exclusive mechanism for a debtor to assert his exemption rights after the trustee has exercised his avoidance powers. Section 522(g) provides:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under section (b) of this section property that the trustee recovers under section ... 550 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section. If the property had not been transfered, if—
>
> (1)(a) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (b) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

For the debtor to exercise his exemption rights under section 522(g) two conditions must be met. First, the debtor must have been able to exempt the property if the property had not been transfered. That condition is clearly present in this case. Second, the transfer of the otherwise exempt property must have been *involuntary* and the debtor must not have concealed the property, or the transfer must be avoidable by the debtor under subsection (f)(2). Because the property in question is a homestead, the transfer of the debtor's interest in this item of property could not have been avoided under (f)(2) of section 522. Therefore, to exercise an exemption right under section 522(g), the debtor in this case must establish that the transfer was not a voluntary transfer. Neither the debtor nor the defendant has claimed that the transfer of his remaining equity in his homestead to his wife on April 16, 1985, was a nonconsensual transfer. Thus, if the trustee is successful in avoiding the transfer under either section 547 or 548, and recovering the property under section 550, the mortgage interest will be preserved for the benefit of the estate under section 551. Postrecovery, the debtor will not be able to exempt the value of the property transferred under section 522(g).

The import of section 522(g) is squarely counter to the theory advanced by the debtor. The section contemplates that the trustee will be exercising his avoidance powers with respect to property that is potentially exempt, but explicitly denies exemption rights to a debtor who voluntarily transfered the property that the trustee has recovered for the estate. This reading of section 522(g) is supported by *In re Gingery*, 48 B.R. 1000 (Bankr.D.Colo.1985), in which the debtor had gratuitously transferred his interest in his homestead to his wife some four months prior to filing bankruptcy. The chapter 7 trustee recovered the value of this transfer from the debtor/spouse. Thereafter, the debtor sought to exempt the amount of the transfer as his homestead. In rejecting the debtor's claim to the exemption, the court first dispensed with the debtor's argument that section 522(g) was not applicable because the trustee had recovered the property under section 548—a section not enumerated in section 522(g). The court noted that section 550 is enumerated under section 522(g) and went on to state:

> the debtor's interpretation of Section 522(g) fails to take into account that the trustee's avoiding powers including Section 548 are incorporated into Section 550.

*Id.* at 1002. The court also held that because the debtor had voluntarily transferred his homestead interest to his spouse:

> Clearly, Section 522(g) bars this debtor from claiming a Colorado homestead exemption within the context of his chapter 7 liquidation because he voluntarily transferred his interest in the family residence to his wife.

*Id.* at 1004. *See also In re Rollins*, 63 B.R. 780, 783 (Bankr.E.D.Tenn.1986); *In re Lamping*, 8 B.R. 709, 711 (Bankr.E.D.Wis. 1981); *In re Mefford*, 18 B.R. 853, 855 (Bankr.S.D.Ind.1982); *In re Nolen*, 40 B.R. 6, 9–10 (Bankr.M.D.Ala.1984).

The defendant does not address the importance of either section 551 or section

522(g). Instead the defendant chooses to rest her motion for summary judgment on the argument that the trustee lacks the power to avoid a transfer as either preferential or fraudulent if it involves previously exempt property. With regard to the claim that the transfer of the debtors' homestead interest was preferential, the defendant's theory is flawed in that it attempts to import the pre-Code doctrine of "diminution of the estate" into section 547(b).

The "diminution of estate" doctrine holds that where the transfer in question did not deplete the debtor's bankruptcy estate, the trustee lacks power under section 547 to attack the transfer. *See* 4 *Collier on Bankruptcy* ¶ 547.03, 547–23 (15th ed. 1988). The origins and applications of this doctrine are discussed at some length by the Eleventh Circuit in *Deel Rent-a-Car, Inc. v. Levine,* 721 F.2d 750, 755–58 (11th Cir.1983). The court's analysis points out that important differences exist between the 1898 Bankruptcy Act and the 1978 Bankruptcy Code. Under the Act, the debtor had no power to exempt recovered property. *Id.* at 757. The Code grants the debtor this power, albeit in a carefully qualified form. *Id.* Application of the "diminution of the estate" doctrine threatens to nullify this scheme. Specifically, with regard to the debtor's power under section 522(h) to avoid preferential transfers of property that he could exempt under section 522(g), the court stated:

> [section 522(h)] requires that the debtor be able to exempt the property recovered. Of course, any time he can do that, the property is by definition unavailable to satisfy the claims of other creditors. The diminution of estate doctrine must automatically fail. In effect, application of the doctrine would nullify section 522(h).

*Deel Rent-a-Car, supra,* 721 F.2d at 757. This analysis applies with equal force to section 522(g). Application of the diminution of estate doctrine would render that subsection superfluous.

The *Deel Rent-a-Car* court implied *in dicta* that, perhaps, the "diminution of the estate" doctrine would apply where the

trustee was seeking to avoid a transfer, not to protect the debtor's exemptions, but to benefit other creditors. *Id.* at 758 n. 20. This comment seems inappropriate in light of the restrictions placed on the debtor's ability to exempt property under section 522(g). By including the condition that the transfer be involuntary by the debtor, Congress has indicated that there will be transfers of otherwise exempt property which the trustee has power to avoid but which, if avoided, do not trigger the debtor's concomitant power to exempt.

In her supplemental brief, the defendant argues that because the property transferred could have been exempted, the debtor, as a matter of law, could not have made the transfer with the intent to hinder, delay or defraud his creditors. The defendant relies upon *In re Agnew,* 818 F.2d 1284 (7th Cir.1987).

In *Agnew,* the debtor, prior to filing bankruptcy, had transferred or released to his nondebtor spouse his interest as a co-tenant in the entirety in the marital homestead. A creditor objected to the debtor's discharge under section 727(a)(2) on the grounds that the prepetition transfer had been made with the actual intent to "hinder, delay, or defraud" creditors. The court held that, because the debtor's interest in his homestead was exempt from execution under state law, the prepetition transfer "was not a transfer with actual intent to defraud [the creditor] because [the creditor] could never have had a claim to the asset in the first place." *Agnew, supra,* 818 F.2d at 1290.

The reasoning of the *Agnew* court, developed in the context of a section 727(a)(2) objection to discharge, applies to a section 548(a)(1) fraudulent conveyance claim as well. *See In re Parameswaran,* 50 B.R. 780, 784–85 (S.D.N.Y.1985) (because the "debtor's transfer of his interest in [his homestead] ... to his wife was made with actual intent to hinder, delay or defraud his creditors, it follows that such conveyance may be set aside by the debtor's trustee in bankruptcy pursuant to 11 U.S.C. § 548(a)(1) and the debtor's discharge must be denied under 11 U.S.C. § 727(a)(2)(A)");

*In re Marcus,* 45 B.R. 338, 342 (S.D.N.Y. 1984) ("an actual intent to hinder, delay, or defraud must be established in order to bar a discharge under 11 U.S.C. § 727(a)(2)(A) and to avoid a transfer under 11 U.S.C. § 548(a)(1)." (citations omitted)). The interest in his homestead that Mr. Weis transferred to his spouse was exempt at the time it was transferred. Under the reasoning of *Agnew,* it appears that the trustee cannot, as a matter of law, prove that the transfer was made with the actual intent to hinder, delay, or defraud creditors.

That section 548(a)(1) and section 548(a)(2) create separate causes of action is self-evident. Therefore, summary judgment for the defendant only as to the claim brought under the former section is proper if the appropriate showing has been made. *Compare American Nurses' Ass'n v. State of Ill.,* 783 F.2d 716, 729 (7th Cir. 1986) (where plaintiff sought relief under alternative legal theories, court notes that summary judgment as to only one of those theories would be proper); F.R.Civ.P. 54(b) ("When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims") *with Bonda's Veevoederfabriek, Etc. v. Provimi, Inc.,* 425 F.Supp. 1034, 1036 (E.D.Wis.1976) ("The Seventh Circuit has made it clear that a judgment may not be rendered on a portion of one claim." (citations omitted)); *cf. Chil–Mil Corp. v. W.T. Grant Co.,* 70 F.R.D. 352, 359 (E.D. Wis.1976) ("When considered in the context of the policy in favor of the expeditious disposition of matters where material facts are not disputed, *see* Rules 12(c) and 56, Rule 54's sanctioning of partial judgment on separate claims suggests that that [sic] partial judgment on the pleadings is a procedural option open to the federal courts."). The standard for summary judgment is found in Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. The relevant language of F.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

There is no genuine issue as to whether the debtor's homestead was exempt prior to its transfer. As indicated above, extension of the court's reasoning in *Agnew* requires this court to find that the defendant is entitled to judgment as a matter of law. Therefore, summary judgment with respect to the trustee's section 548(a)(1) claim is appropriate.

One final procedural matter needs to be addressed. Rule 54(b) of the Federal Rules, made applicable to bankruptcy proceedings by Bankruptcy Rule 7054(a), permits a federal court to enter a final judgment on less than all the claims presented "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Additionally, Rule 56(d) indicates that a partial summary "judgment" is not a final judgment. In light of Rule 56(d), and in view of the fact that no reason has been presented to the court for entering a final judgment at this time, the court declines to make the determination required by Rule 54(b). Pursuant to that rule, therefore, this decision "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b).

In conclusion, the court finds the doctrine of collateral estoppel inapplicable to the issue of the debtor's solvency. Solvency of the debtor at the time the transfer was made being a material fact underlying the trustee's claims, the defendant's motion for summary judgment as to the trustee's section 547(b) and 548(a)(2) claims is denied. As to the trustee's final claim, brought under section 548(a)(1), the immunity of the property transferred from levy under state law entitles the defendant to summary judgment.